Keystone Water Company—White Deer District, Petitioner *v.* Pennsylvania Public Utility Commission, Respondent.

American Home Foods, Inc. et al., Petitioners *v.* Pennsylvania Public Utility Commission, Respondent.

Argued January 31, 1984, before President Judge CRUMLISH, JR., and Judges ROGERS, WILLIAMS, JR., CRAIG, MACPHAIL, DOYLE and BARRY.

*Alan L. Reed,* with him *Thomas P. Gadsden and Margaret B. Dardess, Morgan, Lewis & Bockius,* for petitioner/intervenor, Keystone Water Company— White Deer District.

*Charles B. Zwally,* with him *Christopher C. Conner, Shearer, Mette & Woodside,* of counsel; *H. William Koch,* for petitioner/intervenor, American Home Foods, Inc., Milton Manufacturing Company, International Paper Company and Gold Bond Building Products, Division of National Gypsum.

*Louise A. Knight,* Deputy Chief Counsel, with her *John F. Povilaitis,* Assistant Counsel, *Albert W. Johnson, III,* Deputy Chief Counsel, and *Charles F. Hoffman,* Chief Counsel, for respondent.

OPINION BY JUDGE ROGERS, April 3, 1984:

On July 29, 1981, Keystone Water Company—White Deer District (Keystone) filed with the Pennsylvania Public Utility Commission (Commission) Supplement No. 35 to its Tariff Water-Pa. P.U.C. No. 14 to become effective September 27, 1981. Supplement No. 35 proposed a $580,545 increase in Keystone's annual operating revenues based on operating results for a test year ending March 31, 1981.

The Commission entered an order on November 19, 1981 instituting an investigation of Keystone's existing and proposed water rates, rules and regulations and suspending the effective date of Supplement No. 35 until April 27, 1982. Complaints against the proposed rates were filed and consolidated with the Commission's investigation.

The parties reached an agreement on all issues except whether the dollars representing the investment in Keystone's White Deer Creek Filtration Plant should be included in its rate base and whether the annual depreciation expense attributable to the filtration plant should be allowed as a recoverable expense. Stipulations were submitted to the Administrative Law Judge providing that "the investment in the Filtration Plant is to be included in rate base and the District [Keystone] is to be permitted to recover the appropriate depreciation expense allowance on the Filtration Plant only if required by the decisions of . . . Keystone Water Co. v. Pennsylvania Public Utility Commission, 19 Pa. Commonwealth Ct. 292, 339 A.2d 873 (1975), and . . . Keystone Water Co. v. Pennsylvania Public Utility Commission, 477 Pa. 594, 385 A.2d 946 (1978), which previously considered and decided this issue.'' The parties also stipulated that Keystone was entitled to a $439,952 increase in its annual op-

erating revenues if the investment in the filtration plant was included in the depreciation expense allowed and a $202,732 increase in its annual operating revenues if the investment was not included in the rate base and the depreciation expense was not allowed.

On March 25, 1982, the Administrative Law Judge issued his recommended decision finding that the doctrine of res judicata did not bar litigation of the issue of the inclusion of the investment in the filtration plant in the rate base or the recovery of an appropriate expense allowance and concluding that Keystone was entitled to neither. The Commission entered an order on April 22, 1982 adopting the Administrative Law Judge's recommended decision and ordering that Keystone be allowed a $202,732 increase in operating revenues.

During the Commission's investigation of Supplement No. 35, Keystone filed with the Commission Tariff Water-Pa. P.U.C. No. 28 on January 28, 1982 to become effective March 29, 1982. Tariff No. 28 proposed a $819,374 increase in Keystone's annual operating revenues based on anticipated operating results of a future test year ending September 30, 1982. It was suspended by operation of law until October 29, 1982 because the Commission failed to act prior to Tariff No. 28's effective date of March 29, 1982.

On March 30, 1982, four of Keystone's customers filed a complaint and a motion to strike or dismiss Tariff No. 28 on the ground that Tariff No. 28 was untimely because it was filed during the Commission's investigation of Supplement No. 35. The Commission entered an order on June 22, 1982, denying their motion to strike or dismiss Tariff No. 28 and instituting an investigation to determine the lawfulness, justness, and reasonableness of Keystone's existing rates, rules and regulations and those proposed in Tariff No. 28.

A stipulation on revenue and rate structure issues was entered into on August 17, 1982 which reserved the right of Keystone's customers to seek appellate review of the Commission's dismissal of their motion to strike or dismiss Tariff No. 28. The Administrative Law Judge issued a recommended decision on September 22, 1982 recommending a $190,000 increase in annual operating revenues. The Commission entered an order on October 5, 1982 adopting the recommended decision.

To our docket number 1166 C.D. 1982, Keystone appealed from the Commission's April 22, 1982 order concerning Supplement No. 35 and to our docket number 2638 C.D. 1982, it appealed from the Commission's October 5, 1982 order concerning Tariff No. 28. On January 18, 1983, we ordered that these appeals be consolidated. To our docket number 2768 C.D. 1982, Keystone's customers appealed from the Commission's June 22, 1982 and October 5, 1982 orders concerning Tariff No. 28. On March 2, 1983, we consolidated No. 2768 C.D. 1982 with the previously consolidated No. 1166 C.D. 1982 and No. 2638 C.D. 1982.

Numbers 1166 C.D. 1982 and 2638 C.D. 1982

Keystone built the White Deer Creek Filtration Plant to cure the harm to its water supply by the sediment caused by the construction of Interstate Highway I-80 by the Pennsylvania Department of Transportation (DOT). DOT paid Keystone $1,300,000 as just compensation for taking 130 acres of Keystone's land, the impairment of its water rights, and the "cost to insure the continuance of the supply of potable, water" to Keystone's customers. Keystone invested $1,300,000 in a filtration plant and included its investment in the plant in its rate base. In addition, it claimed approximately $12,000 a year as an expense for depreciation of the filtration plant.

We held in *Keystone Water Company v. Pennsylvania Public Utility Commission, supra,* that the amount invested in the filtration plant should be included in the rate base and that the amount of annual depreciation attributable to the filtration plant should be allowed. Our order was affirmed by an equally divided Supreme Court in *Keystone Water Company v. Pennsylvania Public Utility Commission, supra.*

In *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.,* 19 Pa. Commonwealth Ct. 214, 222, 341 A.2d 239, 245 (1975), we considered the "very same issue . . . presented to this Court in Keystone . . . [;] whether the PUC could exclude from the rate base monies paid by PennDOT as damages for the taking of part of the property of a public utility when the monies received were reinvested in plant used and useful in public service" and came to the same conclusion as we had reached in *Keystone.* The Pennsylvania Supreme Court reversed our order in *Pennsylvania Public Utility Commission v. Pennsylvania Gas and Water Co.,* 492 Pa. 326, 424 A. 2d 1213 (1980), *cert. denied,* 454 U.S. 824 (1981), and in effect overruled the effect of its equal division in the *Keystone* appeal. The Supreme Court held that the Commission's exclusion from rate base of damages paid by DOT for taking utility property invested in plant was proper. As noted, Keystone Water Company contends that our holding in *Keystone, supra,* barred the relitigation of the issue of whether Keystone was entitled to include in its rate base the amount it invested in the White Deer Creek Filtration Plant and claim the annual depreciation attributable to the plant as an expense.

Keystone bases its argument that relitigation of the issue of the inclusion of the amount invested in rate base was barred by res judicata or collateral

estoppel on *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission,* 61 Pa. Commonwealth Ct. 325, 433 A.2d 620 (1981). In that case, the Philadelphia Electric Company (PECO) sought to relitigate the factual issue of whether it had imprudently managed the construction of Unit No. 1 of the Salem Nuclear Plant and if it had, whether such imprudence had caused excess costs of $10.5 million. In an earlier unappealed rate case, the Commission had decided against PECO on these issues. We held that res judicata barred the relitigation in a later administrative proceeding of historical issues of fact, that is, matters residing wholly in the past and not subject to change by time.

As noted, Keystone claims that res judicata bars the Commission's reconsideration of the exclusion of the filtration plant from its rate base. For reasons explained in the margin,[1] it was the principle of col-

---

[1] It was the Commission, which in *Philadelphia Electric, supra,* advanced res judicata as the principle which precluded the relitigation of the factual issues of PECO's asserted incompetent management as the cause of the $10.5 million overrun. The Commission here says that, not the principle of res judicata, but that of collateral estoppel should have been named as the principle which in *Philadelphia Electric v. Pennsylvania Public Utility Commission, supra,* barred relitigation of the factual issues of PECO's imprudent management and its effect on the cost of Unit No. 1. The Commission asserts that res judicata was inapplicable because the causes of action in the first and second rate cases were different because each considered a different test year. We agree with the Commission that both it and we were guilty of a misnomer. In *McCarthy v. Township of McCandless,* 7 Pa. Commonwealth Ct. 611, 618, 300 A.2d 815, 820 (1973), we wrote that "[t]here is identity of causes of action when in both the old and new proceedings the subject matter and the ultimate issues are the same." The ultimate issue in a rate case is the justness and reasonableness of the proposed rates based on test year circumstances. Different rate cases involve different test years. Successive rate cases are not unlike successive appeals from the assessment of real estate for purposes of local taxation. In

lateral estoppel, not res judicata as we named it, which barred relitigation of facts in *Philadelphia Electric*. The question here is that of whether the relitigation of the status of the filtration plant is barred by collateral estoppel. We hold that it is not.

There is a crucial difference between *Philadelphia Electric* and the case at hand. In *Philadelphia Electric* neither the facts nor the law applicable to the matter of the alleged excessive costs of plant construction due to imprudent management were changed during the time between the first and second action. In this case, the facts concerning the source of the money used to build White Deer Creek Filtration Plant did not change between the time that Keystone first litigated whether the amount expended could be included in its rate base and the time this proceeding came on for disposition. However, the law with respect to whether such amounts were includable in a utility's rate base changed when the Pennsylvania Supreme Court in *Pennsylvania Gas and Water Co.*, *supra*, overturned the rule of law announced by us, and not

*Rieck Ice Cream Co. Appeal*, 417 Pa. 249, 209 A.2d 383 (1965), the Pennsylvania Supreme Court held that an application for a review of an assessment is not barred on the principle of res judicata by a determination made in an earlier year; that the propriety of each year's assessment presents a different cause of action. In *Commissioner of Internal Revenue v. Sunnen*, 333 U.S. 591, 598 (1948) the Supreme Court of the United States held that each year's income tax presents a new cause of action and that "the cause of action involved in the second proceeding is not swallowed by the judgment in the prior suit."

The principle of collateral estoppel was, however, applicable in *Philadelphia Electric*, because the issues and the parties were identical, there was a final adjudication in the first action and the issues in question were fully litigated. *See, Safeguard Mutual Life Insurance Co. v. Williams*, 463 Pa. 567, 574, 345 A.2d 664, 668 (1975) for a judicial statement of the elements necessary to the invocation respectively of res judicata and collateral estoppel.

disturbed by the Supreme Court on appeal, in the first *Keystone* case.

In this case, neither res judicata nor collateral estoppel are applicable as a bar to the relitigation of the issue of whether Keystone could properly include its investment in the filtration plant in its rate base and claim the applicable annual depreciation on the plant as an expense. As we have more fully explained in the margin, res judicata does not apply because there is no identity of causes of action in the two actions because the ultimate issue, the reasonableness of proposed rates, related to different test years. Collateral estoppel is designed to prevent relitigation of issues which have once been decided and have remained substantially static, factually and legally. Therefore, a subsequent modification of governing law admits of relitigation of the same issue even though it has been resolved in previous litigation. *Piso v. Weirton Steel,* 235 Pa. Superior Ct. 517, 345 A.2d 728 (1975). In the case before us, a subsequent modification of governing law occurred when the Supreme Court decided *Pennsylvania Gas and Water Co.,* and thus relitigation of the issue of whether the filtration plant may be included in rate base was not barred by collateral estoppel.

The Reporters of the Restatement (Second) of Judgments (1982) have attempted to overcome the bewildering effect of the accretion of labels attached to the subjects of res judicata and estoppel. It would overburden this opinion for us to expound on that work, beyond recommending it for use. Section 28 (2) of the Restatement is exactly on point to this case:

> Although an issue is actually litigated and determined by a valid and final judgment and the determination is essential to the judgment,

relitigation of the issue in a subsequent action between the parties is not precluded in the following circumstance:

. . . .

The issue is one of law and . . . a new determination is warranted in order to take account of an intervening change in the applicable legal context or otherwise to avoid inequitable administration of the laws.

Section 28 (2) applies doubly in this case: not only has there been an intervening change in the law by the Supreme Court's decision in *Pennsylvania Gas and Water Co., supra;* our holding that relitigation is not precluded has the effect in this case of avoiding the uneven application of the law which would be the result if Keystone Water Company alone should be advantaged and its ratepayer's alone disadvantaged by the inclusion in rate base of the eminent domain damages which are the subject of this aspect of these appeals.

Number 2768 C.D. 1982

Four of Keystone's customers who filed complaints against Tariff No. 28 have appealed the Commission's order overruling their motion to strike or dismiss that tariff. Their motions asserted that the filing of Tariff No. 28 was unlawful because Keystone's Supplement No. 35 was then pending. Their principal argument is based on *Pittsburgh v. Pennsylvania Public Utility Commission,* 171 Pa. Superior Ct. 391, 90 A.2d 850 (1952). In *Pittsburgh,* a rail utility filed Tariff Rail Pa. P.U.C. No. P-23 on August 10, 1951 to become effective September 10, 1951. The Commission commenced an investigation of Tariff No. P-23 after the City of Pittsburgh filed a complaint. While the Commission's investigation of Tariff Rail Pa. P.U.C.

No. P-23 was still pending, Pittsburgh Railways filed Tariff Rail Pa. P.U.C. No. P-24. The Commission without investigation of P-24 ordered it to become effective and cancelled Tariff No. P-23. The Superior Court reversed the Commission's order, holding that except by the allowance of temporary rates provided for by Section 310(a) of the Public Utility Law of May 28, 1937, P.L. 1053, 66 P.S. §1150,[2] the Commission has no power to order an increase in rates while the investigation of a utility's new proposed filing was pending. The court wrote that Section 310(a)[3] empowering the Commission to "fix, determine and prescribe temporary rates to be charged by such public utility, pending the final determination of such rate proceeding . . . prohibits successive increases by filing new tariffs while a rate proceeding is still undetermined." *Id.* at 396, 90 A.2d at 852-853.

Hence, *Pittsburgh* stands for the proposition that the Commission may not accept and put into effect a second tariff while an investigation of an earlier filed tariff remains pending. In the case before us, the Commission acted on the second suspended filing only after the conclusion of its investigation and an order disposing of the first. No new rate was made effective while an earlier proposal was under investigation.

The customers next contend that Sections 1308(d) and 1308(e) of the Public Utility Code, 66 Pa. C. S. §1308(d) and (e), considered together, demonstrate that the Legislature intended to prohibit the filing of new proposed rates (Tariff No. 28) while an earlier proposal (Supplement No. 35) was pending. Section 1308(d) provides that:

---

[2] Provisions for temporary rates are now found at Section 1310 of the Public Utility Code, 66 Pa. C. S. §1310.

[3] This language is retained in Section 1310(a) of the Public Utility Code, 66 Pa. C. S. §1310(a).

General rate increases. —Whenever there is filed with the Commission by any public utility . . . any tariff stating a new rate which constitutes a general rate increase, the Commission shall promptly enter into an investigation and analysis of said tariff filing and may by order setting forth its reasons therefor, upon complaint or upon its own motion, upon reasonable notice, enter upon a hearing concerning the lawfulness of such rate, and the Commission may, at any time by vote of a majority of the members of the Commission serving in accordance with law, permit such tariff to become effective, except that absent such order such tariff shall be suspended for a period not to exceed seven months from the time such rate would otherwise become effective. . . .

*The rate in force when the tariff stating such new rate was filed shall continue in force during the period of suspension unless the Commission shall grant extraordinary rate relief as prescribed in subsection (e)* [extraordinary rate relief]. (Emphasis added.)

Section 1308(e) allows utilities to petition the Commission for extraordinary rate relief and empowers the Commission after hearing, to grant or deny it.

The customers' argument is that because the later filed Tariff No. 28 is not a petition for extraordinary relief and because it proposed an effective date earlier than the end of the period of suspension of Supplement No. 35, the filing of Tariff No. 28 was somehow violative of the provision of Section 1308(d) that the rate in force when a new rate is filed shall continue in force during the period of suspension. First, there

324

is nothing in Section 1308 or elsewhere prohibiting the filing of a second proposal for a general rate increase while a first is pending. Second, the filing of a proposed rate increase while earlier filing was pending effected no change in the rate in force when the first proposal was filed. Finally the second filing, Tariff No. 28, was suspended and remained so until after the first Supplement No. 35 was disposed of.

Keystone's customers' final argument is that the Commission's refusal to grant their motions to strike or dismiss Tariff No. 28 was contrary to the Commission's own statement of policy to the effect that multi-stage rate filings will not be granted. This too is without merit. Neither Supplement No. 35 nor Tariff No. 28 was a multi-stage filing. Supplement No. 35 was for a test year ending March 31, 1981 and Tariff No. 28 was for a test year ending September 30, 1982.

Orders affirmed.

ORDER IN 1166 C.D. 1982 AND 2638 C.D. 1982

AND Now, this 3rd day of April, 1984, the orders of the Pennsylvania Public Utility Commission entered respectively April 22, 1982 (our Docket No. 1166 C.D. 1982; below, R-811676) and October 5, 1982 (our Docket No. 2638 C.D. 1982; below, R-82177) are affirmed.

---

ORDER IN 2768 C.D. 1982

AND Now, this 3rd day of April, 1984, the orders of the Pennsylvania Public Utility Commission entered June 22, 1982 and October 5, 1982 at R-821877, R-821877C001 below, is affirmed.