529 A.2d 1231

Eric Howard, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Submitted on briefs February 23, 1987, to Judges MacPhail and Barry, and Senior Judge Barbieri, sitting as a panel of three.

*Richard Weishaupt,* with him, *Sharon Gornstein, Community Legal Services, Inc.,* for petitioner.

*Jeffrey P. Schmoyer,* Assistant Counsel, for respondent.

Opinion by Judge Barry, August 21, 1987:

This is an appeal from an adjudication of the Department of Public Welfare (Department) which affirmed the decision of the Philadelphia County Assistance Office (CAO) which changed the petitioner's Gen-

eral Assistance (GA) category from chronically needy to transitionally needy.

The petitioner, Mr. Howard, lives with his son (born 12/2/64) who is mentally retarded and who receives Supplemental Security Income (SSI). In his capacity as his son's caretaker, Mr. Howard was authorized to receive GA benefits for the chronically needy in January of 1979.[1] His status was reevaluated in June of 1983 at which time it was determined that Mr. Howard's status as being chronically needy was to continue.

On March 7, 1985, the CAO conducted a redetermination interview and subsequently proposed a change in Mr. Howard's status from chronically needy to transitionally needy. Mr. Howard appealed the decision of the CAO and a hearing before a Department

---

[1] Mr. Howard was found to be chronically needy pursuant to 62 P.S. §432(3)(ii) and the regulations promulgated thereunder at 55 Pa. Code §141.61(d)(1)(iv) which provide in pertinent part:
62 P.S. §432(3)(i)(D):

Chronically needy persons are those persons chronically in need who may be eligible for an indeterminate period as a result of medical, social or related circumstances and shall be limited to:

(D) A person who is a caretaker. This category of persons shall include persons whose presence is required in the home to care for another person as determined in accordance with department regulations.
55 Pa. Code §141.61(d)(1)(iv):

(1) Chronically needy persons shall be eligible to receive General Assistance for an indeterminate period due to medical, social or related circumstances which shall be limited to the following:

(iv) A person who is personally providing care for a child under age 6 with only very brief and infrequent absences from the child, or whose presence is required in the home because of illness or incapacity of another member of the household. The caretaker must provide documentation of the illness or incapacity of the household member.

Hearing Officer followed on June 5, 1985. On July 12, 1985, the Hearing Officer issued an order and adjudication affirming the CAO's redetermination of Mr. Howard's status as transitionally needy. On July 15, 1985, the Director, Office of Hearings and Appeals entered a final order affirming the decision of the Hearing Officer. Following a denial of Mr. Howard's request for reconsideration he filed a timely appeal with this Court.

Mr. Howard raises several issues on appeal. First, whether the doctrine of res judicata applies to administrative proceedings before the Department of Public Welfare. Second, if so, whether the application of the doctrine in this case operates to preclude a redetermination of Mr. Howard's status as anything other than chronically needy as found in the 1983 determination if there is no finding of changed circumstances. Third, whether the hearing officer committed an error of law in determining that Mr. Howard was only transitionally needy.

Our scope of review in public assistance cases is limited to determining whether the adjudication is supported by substantial evidence, is in accordance with the law and whether any constitutional rights were violated. *Harston Hall Nursing and Convalescent Home, Inc. v. Department of Public Welfare*, 99 Pa. Commonwealth Ct. 475, 513 A.2d 1097 (1986).

The statutory authority for the Department's redetermination process is found in Section 432(3)(ii) of the Public Welfare Code[2] which provides in pertinent part:

Assistance for chronically needy persons shall continue as long as the person remains eligible. Redeterminations shall be conducted on at least an annual basis. . . .

[2] Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §432(3)(ii).

Initially, we find that the doctrine of res judicata is *not* applicable to the Department of Public Welfare's redetermination process here. For the doctrine of res judicata to be applicable there must be identity of the causes of action. *See Safeguard Mutual Insurance Co. v. Williams,* 463 Pa. 567, 345 A.2d 664 (1975). "[F]or purposes of res judicata, there is identity of causes of action when in both the old and new proceedings the subject matter and the ultimate issues are the same." *McCarthy v. Township of McCandless,* 7 Pa. Commonwealth Ct. 611, 618, 300 A.2d 815, 820 (1973). The ultimate issue in *this* action is whether Mr. Howard is entitled to be categorized as chronically needy at the time of *this* redetermination. The ultimate issue in Mr. Howard's *1983* action was whether he was entitled to be categorized as chronically needy at the time of the *1983* redetermination. Clearly, the ultimate issues in the old and in the new proceedings are not the same. *See generally, Rieck Ice Cream Co. Appeal,* 417 Pa. 249, 209 A.2d 383 (1965) (an application for a review of an assessment not barred on principle of res judicata by determination made in earlier year; propriety of each year's assessment presents a different cause of action). Accordingly, we find that the Department's redetermination of Mr. Howard's entitlement in 1985 is not barred on the principle of res judicata by its determination in 1983 and it must stand on its own merits.

Having so found we would ordinarily not reach Mr. Howard's second argument inasmuch as it is presented in terms of res judicata. However, we consider this to be a misnomer and will address Mr. Howard's second argument as though it were presented in terms of collateral estoppel.

In *Philadelphia Electric Co. v. Pennsylvania Public Utility Commission,* 61 Pa. Commonwealth Ct. 325, 433 A.2d 620 (1981) we held that the doctrine of collateral

estoppel barred the relitigation in a later administrative proceeding of historical issues of fact, *i.e.*, matters residing wholly in the past and not subject to change by time.[3] "Collateral estoppel is designed to prevent relitigation of issues which have once been decided and have remained substantially static, factually and legally." *Keystone Water Co. v. Pennsylvania Public Utility Commission*, 81 Pa. Commonwealth Ct. 312, 320, 474 A.2d 368, 373 (1984).

The question before us, then, becomes whether the issues to be litigated in this redetermination hearing are historical, static or not subject to change. The issue to be determined before the Hearing Officer, here, was whether Mr. Howard was eligible to be classified as chronically needy based upon the necessity of his presence in the home to serve as a caretaker for his son. Clearly, as the needs of his son change, so too, do Mr. Howard's responsibilities towards him. We, therefore, cannot find that the issues here are historical, static or not subject to change which would permit us to conclude that the Department is collaterally estopped from relitigating them in a redetermination proceeding.

It is well-settled that the applicant bears the burden of demonstrating his eligibility for public assistance. *Dempsey v. Department of Public Welfare*, 45 Pa. Commonwealth Ct. 121, 404 A.2d 1373 (1979). Further, in *Juras v. Department of Public Welfare*, 73 Pa. Commonwealth Ct. 169, 172, 457 A.2d 1020, 1022 (1983), we noted that where, as here, the Department issues a

---

[3] We must note that in *Philadelphia Electric Co.*, we relied on the doctrine of res judicata for this proposition. However, in *Keystone Water Co. v. Pennsylvania Public Utility Commission*, 81 Pa. Commonwealth Ct. 312, 318-19, 474 A.2d 368, 372 (1984), we corrected that misnomer by stating that, "it was the principle of collateral estoppel, not res judicata as we named it, which barred relitigation of facts in *Philadelphia Electric*."

PA 162-A[4] the recipient thereof is put on notice that his public assistance benefits may be "terminated unless he [is] able to establish his *continued* eligibility for the benefits." (Emphasis added.) Accordingly, we find that, in order to continue to be eligible for GA benefits as chronically needy, Mr. Howard had the burden of demonstrating that his continued presence in the home was necessary to care for his son.

After careful review of the record, we find that the Hearing Officer's decision is supported by substantial evidence.

In order to be categorized as chronically needy on the basis that Mr. Howard is a caretaker, 55 Pa. Code §141.61(d)(1)(iv) requires that he provide documentation of the illness or incapacity of his son. To that end, Form PA 635, Medical Assessment Form was completed by Mr. Howard's son's physician which indicated that young Mr. Howard suffers from stable residua of birth trauma and mental retardation.

Mr. Howard must also demonstrate that his presence is required in the home because of his son's illness or incapacity. The Hearing Officer found that young Mr. Howard attends special classes at the Martin Luther School and on alternate weeks at the Randolph Skill Center. The PA 635 indicates that young Mr. Howard has a limited capacity, *i.e.,* he has a chronic or acute physical or mental condition which restricts but does not prohibit employment, if work is 30 hours or less a week.[5] Further, Mr. Howard testified that his son was

---

[4] Form PA 162-A (Use of Advance Notice) is issued pursuant to 55 Pa. Code §133.4(b).

[5] Mr. Howard attached a copy of Income Maintenance Bulletin No. 141-84-5 to his brief which clearly indicates that based upon the physician's assessment of young Mr. Howard as having limited capacity, a finding of chronically needy is in order. However, such a finding would apply to young Mr. Howard, not to his father, whose eligibility is in question here.

actually employed part-time April 1, 1985 through May 11, 1985 and that the reason for his discharge was unrelated to his disability (N.T. at 26). In addition, the Hearing Officer found that Mr. Howard volunteers at the Welfare Rights Organization from 9:00 a.m. to 2:00 p.m. and until 5:00 p.m. whenever possible.

Mr. Howard testified that his presence in the home was required in the mornings to assure that his son leaves for school or work on time. He testified further, that his son functions well in familiar, structured settings but that any change in his routine requires Mr. Howard's attention and assistance. The father testified that he is currently able to perform his volunteer activities outside of the home due to an understanding supervisor and introduced copies of his attendance record demonstrating numerous absences. When he was asked what arrangements had been made for his son prior to his having become eligible for GA, Mr. Howard testified that he had been employed at the post office and, further, "When you have a job you can afford a babysitter." (N.T. at 33)

The Hearing Officer made two conclusions, based on this evidence, which Mr. Howard argues amount to an error of law. First, he argues that it was an error of law for the Hearing Officer to conclude that, "[e]ven though the appellant's son is mentally retarded it appears he is employable which makes it questionable that incapacities of the appellant's son require the appellant's presence in the home."[6] Second, he argues that it was an error of law for the Hearing Officer to conclude that, "there has been no documentation provided to verify

---

[6] Adjudication of Hearing Officer Mary Louise Ruggieri dated July 12, 1985.

that the appellant's presence is actually needy [sic] in the home to care for his son."[7]

Mr. Howard's argument is essentially a challenge to the Department's interpretation of its regulations. Our scope of review of an administrative agency's interpretation of its own regulation is limited to determining 1) whether that interpretation is plainly erroneous or inconsistent with that regulation and 2) whether the regulation as interpreted is consistent with the statute under which it is promulgated. *Department of Public Welfare v. Forbes Health System,* 492 Pa. 77, 422 A.2d 480 (1980).

55 Pa. Code §141.61(d)(1)(iv) provides that eligibility as chronically needy is limited to, *inter alia,* "[a] person . . . whose presence is required *in the home,* because of illness or incapacity of another member of the household." (Emphasis added.) The regulation does not specify the portion of the day during which the caretaker's presence is required in the home. In light of the evidence presented at the hearing concerning young Mr. Howard's capabilities and Mr. Howard's responsibilities with respect to him we cannot conclude that the Department's interpretation of this regulation as applied to these facts is clearly erroneous or inconsistent therewith. Further, this regulation is consistent with the statute which it implements, 62 P.S. §432(3)(i)(D) which provides that the category of caretaker includes, ". . . persons whose presence is required *in the home* to care for another person. . . ." (Emphasis added.)

Accordingly, we affirm.

ORDER

Now, August 21, 1987, the Order of the Department of Public Welfare, dated July 15, 1985, is hereby affirmed.

---

[7] *Id.*