## Coder, Appellant, *v.* Pittsburgh DesMoines Steel Co.

Argued October 28, 1940.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD, PARKER, RHODES and HIRT, JJ.

*W. W. Litke,* of *Fleming & Litke,* for appellant.

*Arthur C. Dale,* for appellee.

OPINION BY CUNNINGHAM, J., December 11, 1940:

The appeal in this workmen's compensation case is by the claimant from the action of the court below in affirming a decision of the board refusing to set aside a final receipt executed by appellant.

By uncontroverted testimony it was shown that claimant, during the course of his employment with the defendant steel company as an expert blaster and while engaged in "shooting stumps" on September 28, 1936, suffered an "injury by an accident" within the meaning of Section 301 of our Workmen's Compensation Act of June 2, 1915, P. L. 736, 77 PS §§ 411 and 431. In dodging a piece of timber from an exploded stump claimant tripped over the battery or the wires connected therewith, fell heavily to the ground, and received injuries described by the physician who first attended him as "an abrasion of the skin, and contusion of the skin, over the left area of three ribs in the anterior part of the chest and fractures of [several] ribs."

An open agreement for compensation for total disability was executed and approved under which claimant was paid until November 2, 1936. A final receipt was executed by him on December 18, 1936. Its execution was, under the provisions of the statute, "prima facie evidence of the termination of the employer's liability to pay compensation under [the] agreement."

The controversy in this case began with the filing by claimant, nearly two years thereafter, September 23, 1938, of a petition for the setting aside of the receipt and the reinstatement of the agreement. It was filed expressly under the provisions of Section 434, as amended June 26, 1919, P. L. 642, 77 PS § 1001, upon

the ground that the receipt was founded upon a mistake of fact. In his petition claimant averred he executed the receipt "in the sincere belief that he had recovered from all injury and disability resulting from the said accident"; that the defendant employer also believed claimant's "disability was confined to the fracture of his ribs"; but that claimant has been unable to do any work of the kind he was performing when injured, has suffered two severe attacks of pneumonia, and has been advised by his physician that his existing total disability is "directly traceable to the accident." To this petition the employer answered that claimant had recovered from his injury by November 2, 1936, and was able to return to work, but that "due to lack of work" it was unable to reemploy him.

The matter came on for hearing before a referee on March 22, 1939. It was then shown that claimant prior to the accident was apparently in good health and able to engage in strenuous work; that when the employer declined to reemploy him after the accident he obtained work for a short time with the W. P. A. but was obliged to quit by reason of his physical condition; and that at the time of the hearing he was totally disabled by reason of having developed, in the language of Dr. G. D. Mervine, one of his medical witnesses, "a recent active tubercular infection in both lungs."

The issue before the referee as framed by the petition and answer was whether there was a causal connection between claimant's accidental injury and the disabling tuberculosis from which he was then suffering. The provision of the above cited section of the statute is that "the terms 'injury' and 'personal injury,' as used in this act, shall be construed to mean only violence to the physical structure of the body and such disease or infection as naturally results therefrom." There was undisputed testimony that claimant had an attack of pneumonia about the middle of December, 1936, during which he was treated by Dr. J. W. Kurtz, and a second attack

of pneumonia beginning on January 16, 1938. Dr. Mc-Dowell Tibbons, who treated claimant immediately after the accident, also attended him during his second attack of pneumonia. Claimant put in evidence a certificate showing he was examined on January 16, 1938, at the Lock Haven hospital, the laboratory record showing, inter alia, "very occasional pneumococci found—negative for tuberculosis." There were some conflicts in the medical testimony upon the question of causal connection. Two hearings were had and upon the testimony taken thereat the referee made, inter alia, the following findings of fact: "The active tuberculosis from which the claimant suffers and which totally disables him is the direct result of the accident which he sustained on September 28, 1936, ....... Your referee also finds as a fact that at the time the claimant signed the final receipt he did so in a mistake of fact, the mistake being that the claimant was not in any condition to return to work, although he was under the impression that he had recovered." Accordingly the referee set aside the final receipt and reinstated the agreement for total disability as of November 2, 1936, (the date to which payment of compensation had already been made) to continue, within the limitations of the statute, until claimant's disability ceased or changed in extent.

Upon the employer's appeal to the board that tribunal, after a careful review and discussion of the testimony, concluded claimant had failed to support by substantial competent evidence his contention that the accident caused his disabling tuberculosis, or at least lighted up and accelerated a latent tubercular condition. The board thereupon set aside the above findings of the referee and reversed his order reinstating the agreement. In lieu thereof, the board substituted its own findings that claimant's disability "was not caused by the accident of September 28, 1936, ...... and that at the time the claimant signed the final receipt he did not do so under a mistake of fact or law." In accordance

with its substituted findings the board dismissed claimant's petition to set aside the receipt. Upon claimant's appeal to the common pleas the action of the board was affirmed and judgment, in effect, entered for the employer. The present appeal by claimant followed.

It may well be doubted whether the averments of the petition to set aside this final receipt, or the finding of the referee with respect to the alleged mistake, would be sufficient. We have repeatedly held that a mistaken belief that a claimant's disability had ceased is not such a "mistake of fact" as would warrant the setting aside of a final receipt. The cases with relation to what does and what does not amount to a "mistake of fact" have been classified and discussed in *Dobash v. Jeddo-Highland Coal Co.*, 141 Pa. Superior Ct. 62, 14 A. 2d 842, and what was there said need not be repeated.

Waiving for the present a strict application of the rule, it must be remembered that final receipts are not to be lightly set aside. Where, as here, medical testimony is essential upon the issue of causal connection, the causation must be shown by positive expert opinion evidence of such quality and quantity as to amount to more than probability or conjecture. See *Shuler v. Midvalley Coal Co.*, 296 Pa. 503, 146 A. 146. The standards by which the competency of medical opinion evidence are to be measured have been fully discussed in *Elonis v. Lytle Coal Co.*, 134 Pa. Superior Ct. 264, 3 A. 2d 995.

We have examined the entire record with the above cited cases in mind and agree with the conclusion of the court below that it contains substantial and competent evidence sustaining the findings of the board. That was the only question of law involved below and is the only matter with which we are now concerned. The credibility of the respective expert witnesses and the weight to be attached to the testimony of each were matters exclusively for the board, and where any conflicts ap-

peared in their theories or opinions it was for the board to decide which conclusion it would adopt.

Dr. J. C. Rogers examined claimant, at the instance of the defendant employer, on April 17, 1939, following the first and prior to the second hearing before the referee. X-ray pictures taken at that time were used by him to illustrate his testimony. He stated two ribs had been fractured but no injury had been done to the lung tissue and the fractures had healed nicely. After demonstrating by the X-ray plates that there was "an active tubercular cavity" on the *right* side and that "the right side of the lung had been more profusely infected than the left side," where the ribs had been fractured, the witness testified positively that in his opinion the injury neither caused claimant's existing tuberculosis, nor "lighted up a latent tubercular condition." After stating claimant was totally disabled at the time of his examination, the witness added that, as he found no infection of the apices, claimant had "a mighty good chance of getting well."

Dr. E. L. Jones, in charge of the State Tuberculosis Dispensary at Philipsburg, called by claimant, in reply to the question whether there was any "relationship between the injury that [claimant] suffered and his present condition of tuberculosis," testified: "Well, I think that *possibly* was the exciting cause of the tuberculosis starting up, just the same as influenza and pneumonia might cause this same thing. It *could* be the exciting cause, too, of course, as he has active tuberculosis now." (Italics supplied.)

Dr. G. D. Mervine, also called by the claimant, testified he had examined him on April 10, 1939, and taken X-ray plates of his chest. This witness said a traumatic injury to the chest "makes pneumonia very liable," and continued: "According to the history given to me I would say that there is a reason for the development of his chest condition."

Other physicians called by claimant were Doctors

Tibbons and Kurtz above mentioned. Dr. Tibbons, who in addition to treating claimant on the day of the accident attended him during his second attack of pneumonia in 1938, after referring to the fact that claimant also had pneumonia on the left side several months after the accident, said these circumstances led him "to believe that the injury would have some effect on his left side toward lowering his resistance and inviting infection." An excerpt from his testimony reads: "Q. Doctor, in your opinion, would you say that there is such a relationship between the injury and the infection of tuberculosis that he has? A. Only in that way, inviting infection. In other words, it paved the way for the infection by lowering his resistance."

Dr. Kurtz attended claimant during his first attack of pneumonia in 1936. He testified he had known claimant from "a boy up" as he was the family physician, and that his health prior to the accident had been good. When asked whether there was, in his opinion, any relation between the injury and the *pneumonia* for which he treated claimant his reply was, "Well, I thought that if he fell hard enough to break a rib he fell hard enough to hurt his chest. That was my opinion. I came to that conclusion." He further stated that when claimant asked him where the pneumonia "came from" he told him he "thought it came from the injury that he had."

In the light of what was said in *Elonis v. Lytle Coal Co.,* supra, it is clear that the medical testimony introduced by claimant was not sufficiently positive to sustain the findings of the referee and that the findings of the board to the contrary are supported by the weight of the competent evidence.

Moreover, the hospital record, introduced by claimant himself, would seem to indicate he had no active tubercular infection until sometime subsequent to January 16, 1938, i. e., more than a year after the accident.

For the reasons stated, the single assignment of error must be overruled.

Judgment affirmed.