608 A.2d 1047

**Vivian GRANT, Administratrix of the Estate of Edward D. Grant, Deceased, and Vivian Grant, in her own right**

**v.**

**GAF CORPORATION, in its own right, and as successor-in-interest to the Ruberoid Company, Raymark Industries, Inc., in its own right and a successor-in-interest to Raybestos–Manhattan, Inc., the Celotex Corporation, in its own right and as successor-in-interest to The Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs Manufacturing Company and/or Panacon Corporation; Keene Corporation, in its own right and as successor-in-interest to Baldwin Hill Co., Baldwin–Ehret–Hill, Inc., Ehret Magnesia Manufacturing Company and to the Insulation Division of Mandet Cork Company, to Mundet Company and to Keene Building Prod-**

138

ucts Corporation, Eagle–Picher Industries, Inc., Owens–Corning Fiberglass Corporation, Owens–Illinois Inc., Garlock, Inc., A–Best Products Company, in its own right and as successor-in-interest to Asbestos Products Company; Pittsburgh Corning Corporation; Armstrong World Industries, Inc., in its own right and as successor-in-interest to Armstrong Cork Co. and Armstrong Contracting and Supply Co., Nicolet, Inc., in its own right and as successor-in-interest to Nicolet Industries, Inc., in its own right and as successor-in-interest to Keasbey & Mattison Co.; H.K. Porter Company, Inc., in its own right and as successor-in-interest to Southern Textile Company, formerly Southern Asbestos Company; Fibreboard Corporation, in its own right and as successor-in-interest to Fibreboard Paper Products Corporation, Pabco, Plant Rubber & Asbestos Works, and Plant Asbestos Co.; General Refractories Company, Inc.; A.P. Green Refractories Company; Theim Corporation, and its Division, Universal Refractories; Oglebay Norton Company, and its Division Ferro Engineering; Foseco, Inc.; Allied Glove Corporation, Harbison–Walker Refractories, Inc.; the Gage Company; George V. Hamilton, Inc.; Kaiser Refractories, Division of Kaiser Aluminum & Chemical Corporation; John Crane–Houdaille, Inc., and Foster Wheeler Corporation, in its own right and as successor-in-interest to Forty–Eight Insulations, Inc., National Gypsum Company and Atlas Industries, Inc., in their own right and as successor-in-interest to Atlas Insulation, Inc.

Jean A. GASPERIN, Administratrix of the Estate of Frank J. Gasperin, Sr., and Jean A. Gasperin, in her own right, Appellant,

v.

GAF CORPORATION, in its own right, and as successor-in-interest to the Ruberoid Company; Raymark Industries, Inc., in its own right and a successor-in-interest to the Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs Manufacturing Company and/or Panacon Corporation, Keene Corporation, in its own right and as successor-in-interest Baldwin Hill Co., Baldwin–Ehret–Hill, Inc., Ehret Magnesia Manufacturing Company and to the Insulation Division of Mundet Cork Company, to Mundet Company and to Keene Building Products Corporation, Eagle–Picher Industries, Inc., Owens–Corning Fiberglass Corporation, Owens–Illinois Inc., Garlock, Inc., A–Best Products Company, in its

own right and as successor-in-interest to Asbestos Products Company; Pittsburgh Corning Corporation; Armstrong World Industries, Inc., in its own right and as successor-in-interest to Armstrong Cork Co. and Armstrong Contracting and Supply Co., Nicolet Industries Inc., in its own right and as successor-in-interest to Nicolet Industries, Inc., in its own right and as successor-in-interest to Keasbey & Mattison Co.; H.K. Porter Company, Inc., in its own right and as successor-in-interest to Southern Textile Company, formerly Southern Asbestos Company; Fibreboard Corporation, in its own right and as successor-in-interest to Fibreboard Paper Products Corporation, Pabco, Plant Rubber & Asbestos Works, and Plant Asbestos Co.; John Crane Houdaille, Sager Glove Corp.; Atlas Industries, Inc. formerly Atlas Insulation, Inc.; The Gage Company, George V. Hamilton, Inc., F.B. Wright Co., General Refractories Company, Inc., Harbison–Walker Refractories, Inc., and A.P. Green Refractories Company.

Mildred MURRAY, Administratrix D.B.N.C.T.A.
of the Estate of Bernard Murray and
Mildred Murray, in her own right,

v.

GAF CORPORATION, in its own right, and as successor-in-interest to the Ruberoid Company Raymark Industries, Inc., in its own right and a successor-in-interest to Raybestos–Manhattan, Inc., the Celotex Corporation, in its own right and as successor-in-interest to The Philip Carey Manufacturing Company, Philip Carey Corporation, Briggs Manufacturing Company and/or Panacon Corporation; Keene Corporation, in its own right and as successor-in-interest to Baldwin Hill Co., Baldwin–Ehret–Hill, Inc., Ehret Magnesia Manufacturing Company and to the Insulation Division of Mundet Cork Company, to Mundet Company and to Keene Building Products Corporation, Eagle–Picher Industries, Inc., Owens–Corning Fiberglass Corporation, Owens–Illinois Inc., Garlock, Inc., A–Best Products Company, in its own right and as successor-in-interest to Asbestos Products Company; Pittsburgh Corning Corporation; Armstrong World Industries, Inc., in its own right and as successor-in-interest to Armstrong Cork Co. and Armstrong Contracting and Supply Co., Nicolet, Inc., in its own right and as successor-in-interest to Nicolet Industries, Inc., in its own right and as successor-in-interest to Keasby & Mattison Co.; H.K. Porter Company, Inc., in its own right and

as successor-in-interest to Southern Textile Company, former-
ly Southern Asbestos Company; Fibreboard Corporation, in
its own right and as successor-in-interest to Fibreboard Paper
Products Corporation, Pabco, Plant Rubber & Asbestos
Works, and Plant Asbestos Co.; General Refractories Compa-
ny, Inc.; A.P. Green Refractories Company; Anchor Packing
Company, Harbison–Walker Refractories, Inc.; The Gage
Company, F.B. Wright Co., George V. Hamilton, Inc. North
American Refractories, division of Eltra Corporation, Kaiser
Refractories, division of Kaiser Aluminum & Chemical Corp.,
Foster Wheeler Corporation, in its own right and as succes-
sor-in-interest to Forty–Eight Insulations, Inc., Argo Packing
Company, Allied Glove Corporation, Flexitallic Gasket Com-
pany, and John Crane–Houdaille, Inc.

Superior Court of Pennsylvania.

Argued March 17, 1992.

Filed April 30, 1992.

Reargument Denied July 8, 1992.

142

Tybe A. Brett, Philadelphia, for appellants (at 1579, 2043 and 2073).

Edward A. Schenck, Pittsburgh, for John Crane–Houdaille, Inc. appellee (at 1579 and 2073).

Fredric E. Orlansky, Pittsburgh, for Owens Corning Fiberglas Corp. appellee (at 1579, 2043 and 2073).

Anna M. Sosso, Pittsburgh, for A.P. Green Refractories, appellee (at 2043) and Johns–Manville, participating party (at 1579).

Before ROWLEY, President Judge, and CIRILLO and BROSKY, JJ.

CIRILLO, Judge:

These consolidated appeals arise from civil actions commenced by three plaintiffs, individually and on behalf of the estates of their deceased husbands, against various manufacturers and sellers of asbestos-containing products. The complaints in each action alleged that plaintiffs' decedents had developed asbestosis and carcinoma as a result of exposure to defendants' products during the decedents' employment at U.S. Steel Corporation (USX).[1] Upon defendants' motions, the Court of Common Pleas of Allegheny County granted summary judgment in favor of defendant John Crane, Inc. and against plaintiff Vivian Grant (Mrs. Grant), administrator of the estate of Edward D. Grant; in favor of defendants GAF Corporation, Armstrong World Industries, Inc., The Gage Company and A.P. Green Refractories Company and against plaintiff Jean A. Gasparin (Mrs. Gasparin), administrator of the estate of Frank J. Gasparin; and in favor of defendant John Crane, Inc. and against plaintiff Mildred Murray (Mrs. Murray), administrator of the estate of Bernard Murray.

In 1985, prior to the filing of her civil action, Mrs. Grant filed a Workmen's Compensation/Occupational Disease petition (Fatal WC/OD Petition), pursuant to the Workmen's Compensation Act,[2] against her husband's employer, USX

---

1. USX is not a defendant in the civil actions.

2. 77 P.S. § 1 et seq. Though the Pennsylvania Workmen's Compensation Act (Act) utilizes the masculine gender in its title, the feminine gender is included. *See* 77 P.S. § 2. The General Assembly established the Act pursuant to the enabling provision in Article 3, § 21 of our state constitution (now renumbered at Article 3, § 18).

The General Assembly may enact laws requiring the payment by employers, or employers and employes jointly, of reasonable compensation for injuries to employes arising in the course of their

Corporation. The petition alleged that the decedent, who died at age 39, was exposed to "deleterious dusts, fumes, vapors and particulates throughout the course of [his] employment," and that the decedent's carcinoma was caused by this exposure in the workplace. A hearing was held before a workers' compensation referee, who determined that "decedent's cancer and subsequent death were not a result of any occupational exposure," and that Mrs. Grant had not met "her burden of proving that Decedent's lifetime disability or death was occupationally related." The testimony of Dr. Harvey Mendelow, who testified before the referee on behalf of USX Corporation, was accepted as competent and credible.

Mrs. Grant appealed the referee's decision to the Workmen's Compensation Appeal Board (the Board). The decision was affirmed. Mrs. Grant then appealed the Board's decision to the Commonwealth Court of Pennsylvania, which affirmed. *Grant v. Workmen's Compensation Appeal Board* (USX Corp.), No. 989 C.D.1990, slip op. at 4–5 (Pa.Cmwlth.Ct., filed Jan. 18, 1991).

Following the referee's decision, defendant John Crane, Inc. filed a motion for summary judgment in the civil action, and asserted that as a result of the workers' compensation determination Mrs. Grant was collaterally estopped from pursuing her claim. The trial court agreed and granted the defendant's motion. The court stated:

The issue decided in the workmen's compensation matter was identical to the one presented in the instant action, and ... there was a final judgment on the merits in the workmen's compensation proceeding. The plea of collateral estoppel is asserted against one who was a party or in privity with the party to the prior adjudication and the

employment, and for occupational diseases of employes, whether or not such injuries or diseases result in death, and regardless of fault of employer or employe, and fixing the basis of ascertainment of such compensation and the maximum and minimum limits thereof, and providing special and general remedies for the collection thereof; ...

Art. 3, § 18.

plea is asserted against a party who has had a full and fair opportunity to litigate the issue in question in the prior action. That being so, plaintiff is not free to relitigate the issue which has already been decided adversely to her. *See, McCollough v. Xerox Corporation*, 399 Pa.Super. 135, 581 A.2d 961 (Pa.Super.1990).

Mrs. Gasparin also filed a WC/OD Fatal petition against her husband's employer, USX Corporation, alleging that his carcinoma was caused by his exposure in the workplace to "deleterious dusts, fumes, vapors and particulates throughout the course of claimant's employment." After a hearing, the workmen's compensation referee found that Mrs. Gasparin "failed to prove that the death of the decedent was caused, substantially contributed to, aggravated or accelerated by an occupational disease within the meaning of the Pennsylvania Workmen's Compensation Act, as amended." Mrs. Gasparin appealed this decision to the Board, and the Board affirmed the referee's decision. While the outcome of the hearing before the referee was pending, Mrs. Gasparin filed a civil action in tort against the defendants. Subsequently, in 1991, the defendants filed a motion for summary judgment alleging that Mrs. Gasparin was collaterally estopped from proceeding with her claim against them. The trial court granted the defendants' motion, stating:

> [A] final conclusion in the Compensation Action constitutes collateral estoppel with respect to the issue of causation. Here, as in *Grant*, it is clear that the issue decided in the Workmen's Compensation matter was identical to the one presented in the instant action and that there was a final judgment in the Workmen's Compensation proceeding....

Mrs. Murray's husband was also employed by USX. Mrs. Murray filed WC/OD Fatal petition alleging that the decedent's exposure to asbestos and other gases and fumes in the workplace caused his lung carcinoma and eventual death. The referee concluded otherwise, finding that "the decedent's oat cell carcinoma was related to his heavy cigarette smoking" and that "decedent's death was not

related to any occupational exposure."[3] The referee dismissed Mrs. Murray's petition. On appeal, the Board affirmed the referee's decision. The Commonwealth Court also affirmed, and the Pennsylvania Supreme Court denied allowance of appeal. While the claim was pending before the referee, Mrs. Murray had filed a civil action in tort. Following the referee's decision, in 1991, defendant John Crane, Inc. filed a motion for summary judgment. This motion was granted.

Mrs. Grant, Mrs. Gasparin, and Mrs. Murray each filed timely appeals from the orders granting defendants' motions for summary judgment. The following issues are presented for our review:

1. Should collateral estoppel effect be given to a determination by a workmen's compensation referee in a subsequent civil action when the two proceedings serve different purposes and the requirements of collateral estoppel are not satisfied?

2. Should collateral estoppel effect be given to a determination by a workmen's compensation referee in a subsequent civil action when to do so denies a plaintiff the right to a jury trial under Art. I, Section 6 of the Pennsylvania Constitution?

3. Should collateral estoppel effect be given to a determination by a workmen's compensation referee in a subsequent civil action when to do so violates separation of powers?

When reviewing the grant of summary judgment, this court will reverse only if there has been an error of law or an abuse of discretion. *Jones v. Keystone Ins. Co.*, 364 Pa.Super. 318, 528 A.2d 177 (1987), *alloc. denied*, 518 Pa.

---

**3.** In Barth & Hunt, Workers' Compensation and Work–Related Illnesses and Diseases, 188 (1980), the authors, advocating an "apportionment rule," remark:

When the disease is partially caused or exacerbated by the workers' cigarette smoking, the burden of compensation ought not to fall entirely on the employer because a disability that is intentionally or willfully inflicted is not customarily compensable.

*Id.* at 263. *See also* 77 P.S. § 431 ("no compensation shall be paid when the injury or death is intentionally self-inflicted, ...").

613, 540 A.2d 535 (1988). Where the pleadings, depositions, answers to interrogatories and admissions filed show no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law, summary judgment is appropriate. *Hedlund Manuf. Co. v. Wiser, Stapler & Spivak,* 517 Pa. 522, 539 A.2d 357 (1988).

Collateral estoppel is appropriate where: (1) the issue decided in the prior action was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the plea is asserted has had a full and fair opportunity to litigate the issue in question in a prior action. *Safeguard Mutual Ins. Co. v. Williams,* 463 Pa. 567, 574, 345 A.2d 664, 668 (1975); *Sanders v. Sanders,* 384 Pa.Super. 311, 558 A.2d 556 (1989). Summary judgment is properly granted on grounds of res judicata and/or collateral estoppel if there is no genuine issue of material fact and the pleadings, depositions, answer to interrogatories, admissions on file and supporting affidavits disclose that the moving party is entitled to judgment as a matter of law. *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 464 A.2d 1313 (1983).

In *Duquesne Slag Products Co. v. Lench,* 490 Pa. 102, 415 A.2d 53 (1980), Mr. Justice Roberts described the doctrine of collateral estoppel in terms of "issue preclusion." *Id.* at 107, 415 A.2d at 55 (Roberts, J., dissenting) (quoting F. James, Jr. and G. Hazard, Jr., *Civil Procedure* 532 (2d ed. 1977)). Thereafter, the drafters of the Restatement (Second) of Judgments adopted Justice Robert's modern terminology. In *Keystone Water Co. v. Pennsylvania Public Utility Commission,* 81 Pa.Cmwlth. 312, 474 A.2d 368 (1984), an en banc panel of the Commonwealth Court recommended this language to "overcome the bewildering effect of the accretion of labels attached to the subjects of res judicata and estoppel." *Id.,* 81 Pa.Cmwlth. at 320, 474

A.2d at 373. *See Hebden v. W.C.A.B. (Bethenergy Mines),* 142 Pa.Cmwlth.Ct. 176, 187 n. 4, 597 A.2d 182, 187 n. 4 (1991).

In *Hebden,* the Commonwealth Court stated:

Issue preclusion, traditionally known as collateral estoppel or broad res judicata, "forecloses re-litigation in a later action, of an issue of fact or law which was actually litigated and which was necessary to the original judgment." [citations omitted]. Unlike claim preclusion, there is no requirement that there be an identity of parties between the two actions to preclude relitigation of an issue, and issue preclusion may be asserted as either a "sword or a shield" by a stranger to the prior action as long as the party against whom it is asserted was a party or in privity with a party [to the prior action]. *Calesnick v. Board of Finance & Revenue,* 114 Pa. Commonwealth Ct. 292, 298, 538 A.2d 989, 991 (1988) (quoting *Day v. Volkswagenwerk Aktiengesellschaft,* 318 Pa.Super. 225, 236–37, 464 A.2d 1313, 1318–19 (1983)); *see also In re Estate of Ellis,* 460 Pa. 281, 333 A.2d 728 (1975) (discarding "mutuality of parties" requirement for application of issue preclusion, and adopting the position of Justice (later Chief Justice) Traynor in *Bernhard v. Bank of America National Trust and Savings Assoc.,* 19 Cal.2d 807, 122 P.2d 892 (1942), that issue preclusion prevents relitigation of an issue where the party against whom it is used or one in privity with that party had a full and fair opportunity to litigate the issue in a prior action)).

*Id.* 142 Pa.Cmwlth. at 187–88, 597 A.2d at 188. *See also Thorsen v. Iron and Glass Bank,* 328 Pa.Super. 135, 476 A.2d 928 (1984). For our purposes, the terms "issue preclusion" and "collateral estoppel" are interchangeable and we will use them as such.

■ Here, the parties against whom the charge of issue preclusion is asserted were parties in the prior actions. *Calesnick, supra.* Further, the issue decided in the prior workmen's compensation claims, that the decedents' carcinoma was not related to occupational exposure, is identical

to that presented in the civil actions.[4] Thus, a final determination was made with respect to the issue of whether the decedents' carcinoma and deaths were a result of occupational exposure.

The preclusive effect of this determination in a subsequent tort action is clear; the element of causation is necessary to recovery in a tort action against the defendants/manufacturers. In their complaints, the plaintiffs alleged that during the time of decedents' employment at USX Corporation, "[d]efendants ... were engaged in the business of mining and/or milling and/or manufacturing and/or fabricating and/or supplying and/or selling asbestos-containing products to which plaintiff's decedent was exposed." Additionally, plaintiffs alleged that "[a]s a direct and proximate result of the inhalation of the fibers and dusts contained in the products of defendants[,] ... plaintiff's decedent had contracted asbestosis and carcinoma of the lung, ... which resulted in his ... death[.]" The issue of causation, injury as a result of exposure in the workplace, was decided adversely to the plaintiffs in the workmen's compensation proceeding and thus recovery in a subsequent tort action is precluded. *See McCullough v. Xerox Corporation*, 399 Pa.Super. 135, 581 A.2d 961 (1990), *alloc. denied*, 527 Pa. 624, 592 A.2d 45 (Pa.1991); *Frederick, supra. Cf. Dale Manufacturing Co. v. Bressi*, 491 Pa. 493, 421 A.2d 653 (1980) (claimant, in action arising from employer's petition to suspend workmen's compensation

4. Section 411(2) of the Workmen's Compensation Act provides that "injury," "personal injury," and "injury arising the course of employment" includes "occupational disease" as defined in section 27.1 of the Act, and provides also that "whenever occupational disease is the basis for compensation, for disability or death under this act, it shall apply only to disability or death *resulting from such disease* ..." 77 P.S. § 411(2) (emphasis added). "Occupational disease" includes "[a]sbestosis and cancer resulting from direct contact with, handling of, or exposure to the dust of asbestos in any occupation involving such contact, handling or exposure." 77 P.S. § 27.1(*l*). *See Kusenko v. Republic Steel Corp.*, 506 Pa. 104, 484 A.2d 374 (1984) (adopting "substantial contributing factor" standard of causation); *see also* S. Richman, *Struggle for Reason and Accountability: Current Concepts of Causation, Aggravation and Substantial Evidence in Occupational Disease Claims*, 90 Dick.L.Rev. 363 (1985).

payments and to determine subrogation rights, could take a different position from that taken in prior third-party action in trespass against her physician, since employer was not a party to third-party action and factual issues were never determined because case was settled out of court).

Finally, the parties against whom the doctrine is asserted have had a full and fair opportunity to litigate the issue before a workermen's compensation referee, and the referee's determination in each of those claims was essential to the judgment therein. *Muhammad v. Strassburger, McKenna, Messer, Shilobod and Gutnick*, 526 Pa. 541, 587 A.2d 1346 (1991), *cert. denied*, —— U.S. ——, 112 S.Ct. 196, 116 L.Ed.2d 156 (1991). We find, therefore, that the requirements of collateral estoppel have been satisfied. *Muhammad, supra.*

In *McCullough v. Xerox Corporation, supra,* the plaintiff, Patricia McCullough, was employed as a technical representative at Xerox Corporation for approximately two years. McCullough was diagnosed as suffering from sarcoidosis, a chronic disease characterized by the formation of nodules, especially on the skin or in the bones, lungs, or lymph glands. McCullough pursued a workmen's compensation claim and a civil action in tort. Her tort action was stayed pending the decision in her worker's compensation claim. *Id.* 399 Pa.Super. at 137, 581 A.2d at 963.

A workmen's compensation referee denied McCullough's claim, finding that her injury did not meet the definition of "occupational disease" within the meaning of the Workmen's Compensation Act (Act), 77 P.S. § 1 *et seq.* This decision was affirmed on appeal to the Workmen's Compensation Appeal Board, and affirmed by the Commonwealth Court. Xerox filed a motion for summary judgment. The trial court found that the principles of collateral estoppel precluded McCullough from reasserting her cause of action in a common law tort action. The trial court, therefore, granted Xerox's motion for summary judgment. *Id.*

McCullough appealed to this court and we affirmed, noting that the principles of collateral estoppel apply to judg-

ments from worker's compensation appeal boards. *Id.*, 399 Pa.Superior Ct. at 141, 581 A.2d at 965 (*citing Frederick v. American Hardware Supply*, 384 Pa.Super. 72, 557 A.2d 779 (1989)). The *McCullough* court held:

> [T]he referee found unequivocally appellant's injury was not work-related, and appellant had failed to sustain her burden of proof. This failure was grounded ... in appellant's inability to prove the causation of her injury was aggravated, accelerated or related in any way to her work for Xerox. This was the central issue in appellant's workmen's compensation claim, just as it is instantly, and appellant was afforded a full and fair opportunity to litigate the issue before the referee. *As that judgment is now final, appellants are estopped from pursuing the identical issue in a common law tort action.* To find otherwise would be to undermine the concept of workmen's compensation which has served the workers and economic structure of our society so well.

*Id.* 399 Pa.Super. at 143–44, 581 A.2d at 966 (emphasis added).

Similarly, here the referees in the worker's compensation claims determined that the decedents' diseases and subsequent deaths were not caused by exposure in the work place.[5] The decisions were appealed to the Worker's Compensation Appeal Board and were affirmed. With respect to the subsequent tort actions filed by Mrs. Grant, Mrs. Gasparin and Mrs. Murphy, all were subject to collateral estoppel principles. *Frederick, supra. See also McCullough, supra.*

The doctrine of collateral estoppel is a broader concept than res judicata. It operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from

5. The United States Department of Labor, in a study published in 1980, reported: "Many occupational diseases, particularly respiratory illness, exhibit clinical symptoms indistinguishable from ordinary diseases of life." U.S. Dep't. of Labor, Publ. No. L 1.2:W89/13, *An Interim Report on Occupational Diseases* 2 (1980).

being relitigated in a subsequent suit. *Clark v. Troutman,* 509 Pa. 336, 502 A.2d 137 (1985); *see also Day, supra.* Here, the referees' findings that the decedents' carcinoma was not related to occupational exposure were determined on appeal to be supported by sufficient competent evidence.[6] The doctrine of collateral estoppel is not unavailable simply because administrative procedures are involved; where the agency is acting in a judicial capacity and resolves disputed issues of fact which the parties had an opportunity to litigate, the courts will not hesitate to apply preclusion principles. *Frederick, supra. See also Karch v. Commonwealth,* 87 Pa.Cmwlth. 549, 487 A.2d 1051 (1985); *Fiore v. Commonwealth Department of Environmental Resources,* 96 Pa.Cmwlth. 477, 508 A.2d 371 (1986); *Philadelphia Elec. Co. v. Borough of Lansdale,* 283 Pa.Super. 378, 424 A.2d 514, 521 (1981) (citing *United States v. Utah Construction & Mining Co.,* 384 U.S. 394, 86 S.Ct. 1545, 16 L.Ed.2d 642 (1966)). *See also Nicklos v. Firestone Tire & Rubber Co.,* 346 F.Supp. 185 (E.D.Pa., 1972) (claimant failed to show, with requisite medical certainty, causal connection between accident and injury and claim was rejected by Workmen's Compensation Board; employee was barred from relitigating the same issue in a common law action against employer); *Papa v. Franklin Mint Corporation,* 400 Pa.Super. 358, 583 A.2d 826 (1990) (for injuries allegedly occurring during course of employment, claimant's remedy is limited to those provided by Act, and any failure to prove compensable injury in workmen's compensation proceedings will not support second attempt to prove injury in common law tort action against same employer); *cf. Shaffer v. Pullman Trailmobile,* 368 Pa.Super. 199, 533 A.2d 1023 (1987) (court stated, in dictum, that collateral estoppel principles apply to worker's compensation judgment).

6. A more liberal rule prevails in the admission of evidence in a compensation case than in an action at law for negligence. *Mackey v. Walsh,* 152 Pa.Super. 162, 31 A.2d 355 (1943). A referee in a workman's compensation claim is not bound by the technical rules of evidence in conducting hearings and investigations, but all findings of fact must be supported by sufficient competent evidence. *See* 77 P.S. § 834.

Recently, the Pennsylvania Supreme Court addressed a similar concern in *Martin v. Lancaster Battery Co., Inc. et al.,* — Pa. ——, 606 A.2d 444 (1992). Although the common law action in *Martin* was filed against the employer, the principles announced are useful in our analysis and highlight the interrelationship between the Act and common law actions.

In *Martin,* the supreme court held that where an employee alleges fraudulent misrepresentation on the part of the employer which causes an aggravation of a work-related injury, the employee is not barred from pursuing a common law claim against the employer. The employee averred in his complaint that he was regularly exposed to lead fumes and dust at his place of employment, that his employer monitored the level of lead in his blood through regular testing, and that his employer willfully and intentionally withheld or altered his blood test results, thus exacerbating his existing injury. The trial court granted the employer's preliminary objections to the complaint. On appeal, this court reversed, holding that the employee's claim was actionable at common law. The Pennsylvania Supreme Court affirmed and explained the rationale for refusing to apply the exclusivity provisions of the Workmen's Compensation Act, 77 P.S. § 481(a) as follows:

> Clearly, when the Legislature enacted the Workmen's Compensation Act in this Commonwealth, it could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the Workmen's Compensation Act. There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who actively mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care.

*Id.,* at ——, 606 A.2d at 448; *see also Valloti v. McGinn v. Valloti,* 363 Pa.Super. 88, 525 A.2d 732 (1987), *alloc. de-*

*nied,* 517 Pa. 618, 538 A.2d 500 (1988) (employer's fraudulent concealment of diseases already developed is outside the scope of the protection granted the employer under the Workmen's Compensation Act).

Justice Larsen, the author of the majority opinion in *Martin,* distinguished that court's decisions in *Poyser v. Newman & Co.,* 514 Pa. 32, 522 A.2d 548 (1987) and *Barber v. Pittsburgh Corning Corp.,* 521 Pa. 29, 555 A.2d 766 (1989). Justice Zappala, in his Concurring Opinion in *Martin,* emphasized that distinction, stating:

> In *Poyser,* it was clear that although the employer disregarded safety regulations, the underlying injury was "work-related" and occurred in the course of the employee's employment. *In this appeal, the appellees are not seeking redress for injuries caused by exposure to lead and dust, for those injuries are covered by the Act. Instead, the appellees are seeking damages for the aggravation to the lead-related injuries due to the employer's failure to communicate the test results* evincing Mr. Martin's actual condition.

*Martin, supra,* at ——, 606 A.2d at 449 (Zappala, J., concurring) (emphasis added).

Unlike *Martin,* in the cases before us today there are no allegations in the plaintiffs' complaints of fraudulent misrepresentation, or that the actions of the defendants resulted in the aggravation of existing injuries, or that the injuries for which the plaintiffs seek recovery are noncompensable under the Act or not work-related. In the plaintiffs' complaints, the allegations present a theory of recovery in common law tort, each of which is premised upon the existence of injury resulting from occupational exposure. To reiterate, the referees in the worker's compensation claims determined that the plaintiffs failed to prove, with the requisite medical certainty, causal connection, or that decedents' diseases and deaths were related to occupational exposure. The plaintiffs are bound by their complaints, and the trial court, under the doctrine of collat-

eral estoppel, is bound by the final determination of this issue. *Frederick, supra; McCullough, supra.*

Further, proximate cause in a personal injury tort action and causal connection in workmen's compensation cases are analogous principles. *See McAvoy v. Roberts & Mander Stove Co.,* 173 Pa.Super. 516, 98 A.2d 231 (1953); *see also Coder v. Pittsburgh Des Moines Steel Co.,* 142 Pa.Super. 407, 16 A.2d 662 (1941). Practically, however, a claimant's burden in a compensation case is somewhat less than that of a plaintiff in a negligence action. *See Cease v. Thomas,* 155 Pa.Super. 215, 38 A.2d 547 (1944) (provision that findings of fact shall be based on sufficient competent evidence is liberally construed); *see also Coder, supra* (where medical testimony is essential upon issue of causal connection between employee's accidental injury and employee's disability, the causation must be shown by positive expert opinion evidence of such quality and quantity as to amount to more than probability or conjecture). The responsibility of an employer in a compensation case, therefore, may extend beyond that of a defendant in a negligence case. *See McAvoy v. Roberts & Mander Stove Co. et al.,* 173 Pa.Super. 516, 98 A.2d 231 (1953).

> It must be observed that the phrase "natural and probable result" as used in [compensation] cases has a meaning different from that which it bears when used as a test of foreseeability in a negligence case.... [T]he compensation authorities may find a causal connection even if the disease is an unusual result of such injuries.

*Heyler v. J. Sullivan & Sons Mfg. Corp.,* 172 Pa.Super. 615, 624–25, 94 A.2d 95, 99 (1953). Consequently, decisions in negligence cases are not necessarily binding in compensation cases. *McAvoy, supra.* The converse is not always so. *McCullough, supra; Nicklos, supra; Papa, supra; Shaffer, supra.*

We hold, therefore, that the referees' findings in these cases, affirmed on appeal to the Board, are entitled to collateral estoppel effect. Applying the doctrine of issue preclusion or collateral estoppel to the plaintiff's tort ac-

tions here entitles the defendants/manufacturers to judgment as a matter of law. *Hedlund, supra.* We conclude, therefore, that the trial court did not err or commit an abuse of discretion in granting defendants' motions for summary judgment.

Plaintiffs also raise two constitutional issues. They claim that application of collateral estoppel in this case violates their right to a jury trial under Article I, Section 6 of the Pennsylvania Constitution and violates the doctrine of separation of powers. "[A] legislative enactment enjoys a presumption in favor of its constitutionality and will not be declared unconstitutional unless it clearly, palpably and plainly violates the Constitution. All doubts are to be resolved in favor of a finding of constitutionality." *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 116, 394 A.2d 932, 937 (1978).

Article 1, section 6 of the Pennsylvania Constitution establishes the right to a jury trial: "Trial by jury shall be as heretofore, and the right thereof remain inviolate." The constitutional guarantee of a trial by jury does not, however, prevent the legislature from creating or providing modes or tribunals other than the jury trial for the determination or adjustment of rights and liabilities which were not in existence prior to the adoption of the state constitution. *Tax Review Board of Philadelphia v. Weiner,* 398 Pa. 381, 157 A.2d 879 (1960); *Premier Cereal & Beverage Co. v. Pennsylvania Alcohol Permit Board,* 292 Pa. 127, 140 A. 858 (1928). The legislature may withhold trial by jury from new judicial proceedings created by statute and clothed with no common law jurisdiction. *W.J. Dillner Transfer Co. v. Pennsylvania Public Utility Commission,* 191 Pa.Super. 136, 155 A.2d 429 (1959).

The Workmen's Compensation Act provides a tribunal for the determination of work-related injuries, without resort to time consuming litigation in court. *Turner v. Southeastern Pennsylvania Transportation Authority,* 256 Pa.Super. 43, 389 A.2d 591 (1978). In enacting the statute, the legislature had as its purpose the protection of employees

and their families by insuring quick and certain payment for work-related injuries. *Wagner v. National Indem. Co.*, 492 Pa. 154, 422 A.2d 1061 (1980). In what the legislature and the courts of this Commonwealth have viewed as a fair exchange, the employee relinquishes every other right of action he or she has against the employer. *Rudy v. McCloskey & Co.*, 348 Pa. 401, 35 A.2d 250 (1944); *Vescio v. Pennsylvania Electric Co.*, 336 Pa. 502, 9 A.2d 546 (1940).

> With the ever increasing demand upon judicial time, one of the accepted solutions in recent years has been the attempt to divert dispute-resolution, where appropriate, to forums other than the court rooms. This trend has been motivated by the realization that the traditional trial is not necessarily the exclusive and only effective means by which the disagreements that arise within our society may be resolved. While the salutary benefits of alternative dispute-resolution do not justify a callous disregard of the responsibility to provide trial by jury in instances where that right has been assured by the organic law, it does provide a basis for not construing constitutional provisions guaranteeing the right to jury in such a manner as would exclude any other method for disposing of disputes.

*Parker*, 483 Pa. at 117, 394 A.2d at 938 (footnote omitted).

The plaintiffs do not dispute that both the employer and the employee in a workmen's compensation claim consent to waive their right to a jury trial. *Anderson v. Carnegie Steel Co.*, 255 Pa. 33, 99 A. 215 (1916). Rather, the plaintiffs argue that the application of issue preclusion or collateral estoppel in this case infringes upon the right to trial by jury in a common law tort action against a third party. We disagree.

The Act is the sole and exclusive means of recovery against employers for all injuries arising out of accidents occurring within the course of employment. 77 P.S. § 481(a); *Martin, supra*. The exclusivity provision of the Act bars a common law action against an employer for injuries to which the Act applies, that is, work-related

injuries. 77 P.S. § 481(a). It does not bar a common law action against an employer for an injury which is non-compensable under the Act, or not work-related, *Martin, supra; Valloti, supra,* nor does it preclude an employee from pursuing a common law claim against a third party. *Wagner v. National Indemnity Co.,* 492 Pa. 154, 422 A.2d 1061 (1980); *see also May v. Libert Mutual Insurance Co.,* 323 F.2d 174 (3d Cir.1963) (the scope of the Act cannot be extended in a manner which would destroy either the employee's common law rights against third persons or the common law conception of third persons); *cf. Kline v. Arden H. Verner Co.,* 503 Pa. 251, 469 A.2d 158 (1983); *Dolan v. Linton's Lunch,* 397 Pa. 114, 152 A.2d 887 (1959).

 Once an employee has availed himself or herself of the benefits and protections of the Act, he or she must operate within the confines of the statute. The employee waives the right to trial by jury with respect to that particular claim. If a claimant consents to this waiver, and the compensation proceeding results in an adverse judgment, the claimant cannot then retract the waiver on that claim and choose to proceed differently. The Act does not prohibit an employee from pursuing common law claims against third parties, or against employers in certain circumstances, *Martin, supra,* but neither does it exempt the employee from the application of common law doctrines and rules of law in a civil action once a final determination is made under the Act. This includes, of course, the doctrine of collateral estoppel.

 Under our case law it is clear that our constitutional provision does not require an absolutely unfettered right to trial by jury. *Parker v. Children's Hospital of Philadelphia,* 483 Pa. 106, 118–19, 394 A.2d 932, 939 (1978). "The only purpose of the constitutional provision is to secure the right of trial by jury before rights of person or property are *finally* determined." *Smith's Case,* 381 Pa. 223, 112 A.2d 625 (1955), *appeal dismissed,* 350 U.S. 858, 76 S.Ct. 105, 100 L.Ed. 762 (1955) (emphasis in original text). All that is required is that the right of trial by jury must

not be burdened by the imposition of onerous conditions, restrictions or regulations which would make the right practically unavailable. *Id.* 381 Pa. at 231, 112 A.2d at 629. A legislative requirement that a claimant seek redress through an alternative procedure does not violate Article I, section 6 "provided the right to trial by jury is available prior to a final determination of the respective rights of the parties." *Mattos v. Thompson,* 491 Pa. 385, 390, 421 A.2d 190, 192 (1980).

██ The plaintiffs here pursued their claims through the Act; at no time, however, were their rights to a jury trial on the third party claims restricted *until after a decision was made by the referee and Board.* Clearly, then, the right to trial by jury in the third party civil action is curtailed, but only after a final determination in the alternative procedure. *Id.* Any theoretical burden on the right to trial by jury is "counter-balanced by the substantial advantages provided to him or her under the [Workmen's Compensation] Act." *Id.,* 491 Pa. at 391, 421 A.2d at 193.[7]

Contrary to the plaintiffs' argument, it is not the case that a prior adverse workmen's compensation claim will

7. In light of the relaxed rules of evidence, *see* 77 P.S. § 834, *Mackey, supra,* a lesser burden of proof, *Cease, supra,* and the presumption regarding occupational disease, 77 P.S. § 413, it is objectively more likely that a plaintiff will receive a favorable result in a compensation proceeding than in a civil tort action with respect to the issue of causation.

Section 413 of the Act provides:

**§ 413. Presumption regarding occupational disease**

If it be shown that the employe, at or immediately before the date of disability, was employed in any occupation or industry in which the occupational disease is a hazard, it shall be presumed that the employe's occupational disease arose out of and in the course of his employment, but this presumption shall not be conclusive.

77 P.S. § 413. This presumption is rebuttable. *See Harrigan v. Workmen's Compensation Appeal Board,* 40 Pa.Cmwlth. 390, 397 A.2d 490 (1979) (even if presumption that fireman's heart trouble arose out of his work as a fireman were to apply, unequivocal testimony by physician that the heart disease was not the result of the fireman's work as a fireman would have rebutted it).

The plaintiffs' strategy, to obtain a compensation award and then pursue a claim against the defendant/manufacturers, or to pursue the claims simultaneously, as in all litigation, had its attendant risks.

necessarily deprive a claimant of the right to a jury trial in a common law action. In these particular common law actions, however, the application of collateral estoppel compels the grant of summary judgment in defendants' favor. As in any case where summary judgment is proper, the right to proceed further to a jury trial is foreclosed. The right to a jury trial presupposes a claim that will withstand the defendant's pretrial challenges. As Mr. Justice Brandeis observed: "The command ... that 'the right of trial by jury shall be preserved' does not ... prohibit the introduction of new methods for determining what facts are actually in issue[.]" *Ex parte Peterson*, 253 U.S. 300, 311, 40 S.Ct. 543, 546, 64 L.Ed. 919 (1920). We conclude, therefore, that application of the doctrine of issue preclusion in these actions does not violate the right to a jury trial.

 In their final argument, plaintiffs argue that application of collateral estoppel in these civil actions is a violation of separation of powers. Plaintiffs claim that workmen's compensation referees are part of the executive branch of government, 71 P.S. §§ 11, 12, and the legislature did not delegate to the referees "the authority to decide issues in cases seeking recovery from manufacturers for injuries caused by their products." The exercise of this authority, plaintiffs argue, encroaches upon the judiciary.

 The doctrine of separation of powers is fundamental to the prevent on of concentrated authority and tyranny. "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self-appointed, or elective, may justly be pronounced the very definition of tyranny." *The Federalist No. 47*, at 301 (J. Madison) (C. Rossiter ed. 1961). This principle, that the executive, legislative and judicial offices are independent, co-equal branches of government, is inherent in the governmental structure of the Commonwealth. Pa. Const., Art. V, Sec. 1; *DeChastellux v. Fairchild*, 15 Pa. 18 (1850); *Sweeney v. Tucker*, 473 Pa. 493, 375 A.2d 698 (1977). Nonetheless, the doctrine of separation of powers does not contemplate total separation

of the three branches of government, and some powers may overlap. The lines of division are often indeterminate and incapable of exact definition. *Sweeney, supra; see also Lloyd v. Fishinger,* 529 Pa. 513, 605 A.2d 1193 (1992).

An administrative body or its executive officer can be vested with the authority to carry out the administrative duties assigned by statute. *Parker, supra.* The legislature may leave to administrative officers, boards and commissions the duty to determine whether facts to which the law is restricted exist. *Holgate Bros. Co. v. Bashore,* 331 Pa. 255, 200 A. 672 (1938). The exercise of adjudicative functions by administrative bodies is not a withdrawal of judicial function from courts in contravention of constitutional doctrine of separation of powers. *Id.* 483 Pa. at 126, 394 A.2d at 942–43 (citing *Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932)).

A workmen's compensation referee is appointed by and subject to the supervision of the Secretary of the Department of Labor and Industry. 77 P.S. § 701. The 1972 amendments to the Act gave greater authority to referees in their fact-finding role; however, the Board may choose to hear new evidence.[8] *See Universal Cyclops Steel Corp. v. W.C.A.B.,* 9 Pa.Cmwlth. 176, 305 A.2d 757 (1973). The Workmen's Compensation Act does not set aside judicial functions; it contemplates administrative review to the Workmen's Compensation Appeal Board, 77 P.S. §§ 701– 856, and judicial review by the Commonwealth Court. 77 P.S. §§ 871. The Act does not remove any traditional, common law remedy; it merely provides an additional administrative remedy. *Parker, supra.* Accordingly, we are not persuaded by plaintiffs' separation of powers argument. *Parker, supra.*

Orders affirmed.

---

**8.** Feb. 8, P.L. 25, No. 12, § 3.