525 A.2d 732

**Cecilia McGINN, Appellant,**

v.

**Joseph M. VALLOTI, M.D.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1986.

Filed March 16, 1987.

Reargument Denied May 29, 1987.

Avram G. Adler, Philadelphia, for appellant.

R. Bruce Morrison, Norristown, for appellee.

Before CIRILLO, President Judge, and ROWLEY and BECK, JJ.

BECK, Judge:

The issue is whether the Workmen's Compensation Act immunizes a physician employed by a company from liability to a co-employee who states a cause of action for intentional fraudulent misrepresentation. We find the company physician may be liable and therefore reverse the trial court's grant of summary judgment in favor of the physician.

In April 1980, plaintiff-appellant, Cecilia McGinn, injured her wrist while on the job as an assembly worker at Scott Paper Company (Scott Paper). From April through July of that year, she was treated by defendant-appellee, Dr. Joseph M. Valloti, at his office on the premises of Scott Paper. During that time Dr. Valloti prescribed medication, provided a brace, and on several occasions recommended that McGinn take time off from work to rest her wrist. McGinn claims that because she saw no improvement in her condition she asked Dr. Valloti about consulting a doctor outside the plant. Valloti informed her that she could not consult an outside doctor without his permission. He stated if she did she would be fired. She asserts that he knew that she had a right to outside medical consultation under the Workmen's Compensation Act. She concludes that if she had seen another doctor, her wrist would not have deteriorated, because she would have received proper treatment.

In July 1980, while Valloti was on vacation, McGinn, continuing to complain about her wrist, reported to the Scott Paper dispensary. At the company dispensary Nurse Toogood advised her to see her family doctor. She saw him immediately and within days she was seen by several specialists. She has undergone several operations and has had rehabilitation therapy for her hand. She claims she has lost the use of her hand.

McGinn brought suit against Valloti for damages caused by his alleged intentional fraudulent misrepresentation in

advising her that she would be fired if she exercised her right to see a doctor outside the plant as provided in the Workmen's Compensation Act.

The trial court, finding Valotti immune from liability, granted his motion for summary judgment on the basis of Section 205 of the Workmen's Compensation Act ("Act").[1] McGinn appeals the grant of summary judgment.

■ A motion for summary judgment may properly be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b). In reviewing the trial court's grant of summary judgment, we must examine the record in the light most favorable to the nonmoving party. We do not decide issues of fact, but determine only whether there is an issue of fact to be tried. Any doubt must be resolved against the moving party. *See Washington Federal Savings & Loan v. Stein,* 357 Pa.Super. 286, 288, 515 A.2d 980, 981 (1986).

■ We note at the outset that Valloti asserts that appellant's complaint fails to state a claim for fraudulent misrepresentation with the specificity required by Pennsylvania Rule of Civil Procedure 1019(b). We disagree. This rule provides in part that "[a]verments of fraud or mistake shall be averred with particularity." The requirements of the rule are satisfied if plaintiff pleads facts sufficient to permit defendant to prepare his defense. Plaintiff must set forth the exact statements or actions plaintiff alleges constitute the fraudulent misrepresentations. *DelConte v. Stefonick,* 268 Pa.Super. 572, 408 A.2d 1151 (1979). While conceding that appellant's complaint is inartfully drawn, we find that, liberally construed, her allegation in Paragraph 9(f) satisfies Rule 1019(b): she avers that defendant advised "[p]laintiff that her employment was at risk if she sought a

1. Pa.Stat.Ann. tit. 77, § 72 (Purdon Supp.1986).

second opinion for the condition which had persisted in her left wrist."

In reviewing the grant of summary judgment, we must take McGinn's averments as true. *Rybas v. Wapner*, 311 Pa.Super. 50, 457 A.2d 108 (1983). In light of this standard we find the trial court's grant of summary judgment improper. McGinn avers that Valloti intentionally misrepresented to her that she had no right to outside medical treatment under the Workmen's Compensation Act and that she would be fired if she sought such treatment. We find such averments state a cause of action for intentional fraudulent misrepresentation. We must determine, however, whether Section 205 of the Workmen's Compensation Act immunizes Valloti from liability. We find it does not.

Section 205 provides:

If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, *except for intentional wrong.* (emphasis added).

McGinn initially claims that Dr. Valloti was not a fellow employee under the Act because Scott Paper did not directly control his medical practice and procedures. We disagree. This argument was thoroughly explored in *Budzichowski v. Bell Telephone Company of Pennsylvania*, 503 Pa. 160, 469 A.2d 111 (1983), following *Babich v. Pavich*, 270 Pa.Super. 140, 411 A.2d 218 (1979). The *Babich* court, discussing the status of a plant physician working for Bethlehem Steel, provided:

Although the record does indicate that Bethlehem does not control the manner and method of treating patients, this fact alone is not controlling in determining whether appellee is an employee or independent contractor. The following facts point to the conclusion that appellee is an employee rather than an independent contractor: he worked for Bethlehem on a full-time basis; Bethelehem [sic] paid him a fixed salary and did not allow him to

engage in private practice; his fringe benefits were the same as those received by Bethlehem's supervisory employees; and Bethlehem controlled the hours and number of days that appellee worked.

270 Pa.Super. at 145, 411 A.2d at 221. The court cautioned that none of these factors absolutely controls the outcome and each case must be determined on its facts. *Id.*

■ In support of her position, McGinn points out that Dr. Valloti worked only part-time at Scott Paper, from 8:00 a.m. to noon, five days a week. However, we find more significant the facts that his hours were regular, and set by his employer; that he received the same fringe benefits as other part-time employees at Scott Paper; that Scott Paper withheld Social Security and federal income taxes from his paycheck; and that he reviewed all decisions concerning the hiring and firing of nurses on the dispensary staff. In short, Valloti was an integral part of the day-to-day operations at Scott Paper and we conclude that he was a co-employee of McGinn for purposes of Section 205.[2]

■ Secondly, McGinn claims that Valloti's statement that she would be fired if she sought outside medical help was an intentional fraudulent misrepresentation. As such it is the kind of "intentional wrong" that deprives him of the immunity conferred by Section 205. We agree.

The trial court in granting summary judgment in favor of Valotti relied on *Higgins v. Clearing Machine Corporation,* 344 Pa.Super. 325, 496 A.2d 818 (1985). This court held in *Higgins* that the employer's knowing violation of safety regulations and knowing neglect of a dangerous

---

**2.** Appellant further contends that appellee should be precluded from claiming the status of a co-employee because of his failure to provide her a list of five outside physicians as she asserts he is required to do by Section 531 of the Act. Section 531 provides that *an employer* may at his option provide an employee with a list of five physicians from whom the employee must obtain treatment for a period of 14 days following the first visit. Nowhere does § 531 *require* the employer, much less a co-employee physician, to provide such a list.

condition did not constitute an intentional tort so as to take the injury out of the coverage of the Act.

The trial court read *Higgins* overly broadly as suggesting that in Pennsylvania employers are now insulated from liability for *any* intentional misconduct. This is fundamentally wrong. On the contrary, the Superior Court in *Higgins* carefully distinguished between non-actionable intentional misconduct, such as an employer's knowing violation of safety requirements, *Evans v. Allentown Portland Cement Company*, 433 Pa. 595, 252 A.2d 646 (1969); and actionable intentional misconduct, such as an employer's physical assault upon an employee. *Readinger v. Gottschall*, 201 Pa.Super. 134, 191 A.2d 694 (1963). The fact that the *Higgins* court found that the employer's actions did not fall within the intentional tort exception to the Workmen's Compensation Act should not be interpreted as rendering the exception meaningless.[3]

■■■ In determining the nature of the intentional tort that will give rise to a cause of action under Section 205, we examine whether the "intentional wrong" is one that is not normally expected to be present in the workplace. An

3. The proposition embraced by the trial court here, that an employer is completely immune from liability for any intentional tort, was advanced by appellees in *Higgins.* Appellees there pointed out that the holding in *Readinger* was based on the language in the Act requiring that an injury be the result of an "accident" to be compensable. Because the employer's deliberate assault was not an accident, it fell outside the Act. The 1972 amendments to the Act eliminated the requirement that the injury be the result of an accident. Appellees argued that the deletion from the Act of the language relied on in *Readinger* would imply that *Readinger's* holding, recognizing an exception to the coverage of the Workmen's Compensation Act for an employer's intentional tort, was no longer valid. We disagree. The continued validity of *Readinger* was assumed by this court in *Jones v. PMA Insurance Company*, 343 Pa.Super. 411, 495 A.2d 203 (1985), a case decided well after the 1972 amendments. Even more recently, this court explicitly stated, "[A]n action can lie against the employer itself if it harmed its employee through an intentional wrongful act." *Boris v. Liberty Mutual Insurance Company*, 356 Pa.Super. 532, 539, 515 A.2d 21, 24–25 (1985). Clearly, the 1972 amendments did not abolish the intentional tort exception to the Act.

employee does not normally expect a physical assault, *Readinger, supra,* and an employee does not normally expect infliction of emotional distress, *Jones v. PMA Insurance Company,* 343 Pa.Super. 411, 495 A.2d 203 (1985); therefore these intentional torts have been found to be actionable. In contrast, an employee might expect the condition of the workplace itself to be unsafe; for example, where there has been a knowing neglect of safety regulations. Therefore these intentional torts have been found to be nonactionable. *Evans, Higgins, supra.* We conclude that intentional fraudulent misrepresentation is more like physical assault and intentional infliction of emotional distress than an unsafe workplace. Fraudulent misrepresentation is not a hazard normally expected to occur in the workplace and it is therefore actionable.

In adopting this standard, we are influenced by the New Jersey Supreme Court's rationale in a worker's compensation case, *Millison v. E.I. duPont de Nemours & Co.,* 101 N.J. 161, 501 A.2d 505 (1985). There, plaintiff-employees suffering from asbestos-related diseases brought suit against their employer du Pont and against the plant physicians who learned during employee physicals that employees showed signs of pulmonary disease and fraudulently concealed this knowledge. The court found that the employees stated a cause of action against the doctors:

> Plaintiffs contend that although plaintiffs' physical examinations revealed changes in chest x-rays indicating asbestos-related injuries, du Pont's doctors did not inform plaintiffs of their sicknesses, but instead told them that their health was fine and sent them back to work under the same hazardous conditions that had caused the initial injuries.
>
> These allegations go well beyond failing to warn of potentially-dangerous conditions or intentionally exposing workers to the risks of disease. There is a difference between, on the one hand, tolerating in the workplace conditions that will result in a certain number of injuries

or illnesses, and, on the other, actively misleading the employees who have already fallen victim to those risks of the workplace. *An employer's fraudulent concealment of diseases already developed is not one of the risks an employee should have to assume. Such intentionally-deceitful action goes beyond the bargain struck by the Compensation Act.* But for defendants' corporate strategy of concealing diseases discovered in company physical examinations, plaintiffs would have minimized the dangers to their health. Instead, plaintiffs were deceived—or so they charge—by corporate doctors who held themselves out as acting in plaintiffs' best interests. The legislature, in passing the Compensation Act, could not have intended to insulate such conduct from tort liability.

*Id.* 501 A.2d at 516 (emphasis added).

We note that the plaintiff-employees in *Millison* also brought suit against du Pont for knowingly exposing them to a hazardous work environment. The court dismissed this portion of the suit against du Pont on the ground that knowing disregard of employee safety did not fall within the "intentional wrong" exception of the New Jersey Worker's Compensation statute.

We hold that in enacting the Workmen's Compensation Act the Pennsylvania legislature did not intend totally to wipe out all of the employees' rights to sue in tort, but instead struck a bargain between employer and employee and excluded from coverage under the Act those intentional torts normally not expected to be present in the workplace. Matters outside the scope of the bargain are still governed by the common-law tort system.

We hold that Valloti's alleged intentional fraudulent misrepresentations are actionable as an "intentional wrong" under Section 205 of the Act.

We reverse the trial court's grant of summary judgment and remand for trial.