658 A.2d 366

**Bryan SNYDER, Appellant,**

v.

**SPECIALTY GLASS PRODUCTS, INC., B. Patel, Carol Hubbard and Frank Arrison, Appellees.**

Superior Court of Pennsylvania.

Argued March 16, 1995.

Filed April 27, 1995.

614

Steven Cotlar, Doylestown, for appellant.

George A. Priestley, Warminster, for appellees.

Before HUDOCK, SAYLOR and HESTER, JJ.

HUDOCK, Judge:

Appellant, Bryan Snyder, appeals from the trial court order of November 30, 1993 which granted Appellee's, Specialty Glass Products, Inc., preliminary objections and the August 25, 1994 order which granted summary judgment in favor of Appellees, B. Patel, Carol Hubbard and Frank Arrison. We affirm.

This case commenced on February 26, 1993 when Bryan Snyder (Snyder) filed a complaint against his employer, Spe-

cialty Glass Products, Inc. (Specialty), for intentional infliction of emotional distress (IIED). Snyder alleged in his complaint that while on his way to work on February 17, 1993 he stopped to administer emergency medical treatment to a woman involved in a serious automobile accident. Snyder, who was certified as an Emergency Medical Technician (E.M.T.) pursuant to 35 P.S. section 6931, arrived late for work as a result of administering emergency medical treatment. Snyder claimed that when he arrived at work and explained why he was late, his supervisors B. Patel and Carol Hubbard severely reprimanded him for his tardiness and warned him that he would be discharged. Snyder claimed that he was subsequently demoted by the company president Frank Arrison and told to choose between his job as an E.M.T. or his employment with Specialty.

Snyder claimed that as a result of this reprimand and demotion he suffered emotional and physical trauma causing vomiting, nausea, severe headaches, chest pains and elevated blood pressure. Snyder also claimed that his employers' acts caused him anxiety, depression, loss of appetite and insomnia. Alleging that he incurred costly medical bills to treat his ailments, Snyder sought compensatory and punitive damages in excess of $50,000.

Specialty filed preliminary objections on March 18, 1993 in which it contended that the court lacked subject matter jurisdiction to entertain Snyder's suit. Specialty claimed that the Pennsylvania Workers' Compensation Act (WCA), 77 P.S. section 1 *et seq.*, was Snyder's sole source of recovery.

Snyder filed an amended complaint on April 8, 1993 adding Frank Arrison, B. Patel and Carol Hubbard as defendants. The additional defendants filed preliminary objections on April 19, 1993 reasserting that the court lacked subject matter jurisdiction to entertain Snyder's civil action pursuant to the exclusivity provisions of the WCA. The additional defendants also raised a preliminary objection asserting that Snyder's complaint failed to state a claim upon which relief may be granted.

On November 30, 1993, the trial court granted the preliminary objection filed by Specialty challenging the court's subject matter jurisdiction. The trial judge dismissed count one of the complaint against Specialty, concluding that the WCA was Snyder's exclusive remedy against his employer. As for the individual defendants, the trial court ruled that they had improperly raised the preliminary objections by amendment without obtaining the court's or Snyder's consent. Therefore, the trial judge refused to rule on the merits of their preliminary objections.

The individual defendants thereafter filed a motion for summary judgment. The trial court granted the motion on August 25, 1994 and dismissed Snyder's amended complaint. This direct appeal followed.

Snyder alleges that the trial court erred when it granted Specialty's preliminary objection in the nature of a demurrer and dismissed count one of his complaint. When reviewing the grant or denial of a preliminary objection in the nature of a demurrer, we must regard the allegations in the appellant's complaint as true and accord him all the inferences reasonably deductible therefrom. *National Building Leasing, Inc. v. Byler*, 252 Pa.Super. 370, 372, 381 A.2d 963, 964 (1977). "If the [appellant] does set forth a cause of action on which he is entitled to relief upon proof, the demurrer cannot be sustained. Conversely, a preliminary objection in the nature of a demurrer is properly sustained where the complaint has failed to set forth a cause of action." *Higgins v. Clearing Machine Corporation*, 344 Pa.Super. 325, 327, 496 A.2d 818, 819 (1985), (citing *Acme Markets, Inc. v. Valley View Shopping Center, Inc.*, 342 Pa.Super. 567, 569–70, 493 A.2d 736, 737 (1985)). When a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it. *Martin v. Lancaster Battery Company, Inc.*, 530 Pa. 11, 15, 606 A.2d 444, 446 (1992).

The trial court granted Specialty's preliminary objection in the nature of a demurrer on the grounds that Snyder's claim

was barred by section 303(a) of the WCA, codified at 77 P.S. section 481(a). That section provides:

(a) The liability of an employer under this act shall be exclusive and in place of any and all liability to such employes, his legal representative, husband or wife, parents, dependents, next of kin or anyone otherwise entitled to damages in any action at law or otherwise on account of any injury or death as defined in section 301(c)(1) and (2) or occupational disease as defined in section 108.

77 P.S. § 481(a) (emphasis added) (footnotes omitted).

This Court has previously explained the legislative purpose of limiting an employee's right to sue in tort for injuries sustained in the course of employment.

The Legislature ... enacted the Workmen's Compensation Act to provide employees with compensation for injuries sustained within the scope of their employment. In exchange for the right to compensation without the burden of establishing fault, employees gave up their right to sue the employer in tort for injuries received in the course of employment.

*Kosowan v. MDC Industries, Inc.*, 319 Pa.Super. 91, 98–99, 465 A.2d 1069, 1072 (1983).

Section 301(c)(1) defines the types of injuries which are compensable under the WCA. It provides:

(1) The terms "injury" and "personal injury," as used in this act, shall be construed to mean an injury to an employe, regardless of his previous physical condition, arising in the course of his employment and related thereto, and such disease or infection as naturally results from the injury or is aggravated, reactivated or accelerated by the injury[.] ...

77 P.S. § 411(1).

The trial court reasoned that Snyder's alleged injury was compensable under the WCA since it arose from his employment status and occurred during the scope of his employment. Therefore, the court concluded that Snyder was bound by the exclusive remedy provision of the WCA. The trial court also concluded that Snyder did not qualify under any statutory or

common law exception to the exclusivity provision of the WCA. The court relied on the Supreme Court of Pennsylvania's rationale in *Poyser v. Newman & Company, Inc.,* 514 Pa. 32, 522 A.2d 548 (1987), for this conclusion. In *Poyser,* the appellant, Stephen Poyser, filed a tort action against his employer after he lost a portion of his finger while operating a notching machine. Poyser alleged that his employer's conduct caused his injury and constituted a "deliberate and wanton disregard for the safety of its workers[.]" *Id.,* 514 Pa. 35, 522 A.2d at 550. Poyser argued that his employer forbade its workers from using a safety device on the notching machine and knowingly failed to comply with federal and state safety regulations. The trial court granted the employer's judgment on the pleadings and dismissed Poyser's complaint based on the exclusivity provision of the WCA.

On appeal Poyser argued that the immunity provision of the WCA should not apply because his employer's conduct amounted to an intentional tort. The Supreme Court rejected Poyser's argument and noted that the Pennsylvania WCA does not contain an exception for injuries caused by the employer's intentional torts. The Court explained:

> There is no Pennsylvania judicial authority supportive of the result the appellant seeks. The argument he presents is one based entirely on his view of the relationship between the Act and other laws and regulations which bear upon safety in the workplace....

> It is true that the appellate courts of some other states have held that wanton and willful misconduct by an employer is tantamount to an intentional tort, and as such, prevents the operation of a statutory exclusive-remedy provision. It must be noted, however, that those cases rested on provisions in the state workmen's compensation statutes which expressly preserved the right of an employee to sue in tort where his injury was caused by the employer's intentional wrongdoing. There is no such provision in The Pennsylvania Workmen's Compensation Act.

> The appellant's argument is an interesting one; but it is one that must be resolved by the General Assembly, not this

Court. What he is asking us to do is to engraft upon section 303(a) of the Act an exception the legislature did not see fit to put there. A reading of the Act will disclose that the legislature was not unmindful of the issue of intentionally caused harm.... Since it is clear that the legislature had the issue of intentional harm in mind, and yet did not mention it in connection with section 303(a), we are constrained to conclude that the legislature did not intend the result for which the appellant argues.

*Id.,* 514 Pa. 37, 522 A.2d at 551 (citation omitted).

The Supreme Court of Pennsylvania reaffirmed that the WCA does not provide an exclusion for intentional torts of an employer in *Barber v. Pittsburgh Corning Corporation,* 521 Pa. 29, 555 A.2d 766 (1989). In *Barber,* the Supreme Court was presented with the issue whether there is an exception to the exclusivity provision of the Occupational Disease Act (ODA) for an employee's injuries allegedly sustained by intentional misconduct of the employer. Recognizing that the exclusivity provision of the WCA is very similar to the exclusivity provision of the ODA, the Supreme Court relied on its decision in *Poyser.* The Court held that "[t]he clear language of both of these sections dictates that the only remedy available to an injured employee is statutory." *Id.,* 521 Pa. 34, 555 A.2d at 769. The Court also pointed out that "[t]his Court has never acknowledged or recognized [an exception for intentional torts] to the exclusivity provisions of our workmen's compensation statute." *Id.,* 521 Pa. 39, 555 A.2d at 771.

In *Barber,* our Supreme Court recognized that both the ODA and the WCA contain an exception for intentional misconduct of a fellow employee. Thus, the Court reasoned that the Legislature purposely did not provide an exception for intentional torts of the employer. The Court explained:

The significance of this provision indicates that the legislature, in its grant of immunity to fellow employees, expressly excluded intentional misconduct. However, in the immunity provided for the employer, under section 303 of the ODA no such exception was engrafted. This omission cannot be lightly ignored. It is obvious that the legislature considered

the issue of intentional torts and created an exception to the statutory immunity when intentional harm was caused by the co-employee. The legislature's failure to provide a similar exclusion to the immunity provided for the employer must be deemed to have been deliberate. This conclusion is further bolstered by the exception to the immunity in section 205 of the WCA regarding fellow employees with a corresponding absence of such an exclusion under section 303 of the WCA. This would suggest a clear legislative judgment not to recognize an intentional tort exception for employers.

*Id.* 521 Pa. 36, 555 A.2d at 770 (citations omitted).

The facts of *Papa v. Franklin Mint Corporation,* 400 Pa.Super. 358, 583 A.2d 826 (1990) (per curiam), are similar to the facts of the instant appeal. In that case, Esther Papa sued her employer for damages for depression and emotional distress allegedly caused by the intentional acts of her employer and co-employees. The trial court entered judgment on the pleadings in favor of the employer based on the exclusivity provision of the WCA. On appeal this Court affirmed and held:

The Supreme Court of Pennsylvania has held that there is no intentional tort exception to the exclusivity clause of the Workmen's Compensation Law. See: *Barber v. Pittsburgh Corning Corporation,* 521 Pa. 29, 555 A.2d 766 (1989); *Poyser v. Newman & Co., Inc.,* 514 Pa. 32, 522 A.2d 548 (1987). The exclusivity provision is not rendered ineffective merely because the claimant-employee, in proceedings to recover workmen's compensation benefits, was unable to prove a compensable injury. For injuries allegedly occurring during the course of employment, an employee's remedy is limited to those provided by the Act.

*Id.,* 400 Pa.Super. 358, 583 A.2d at 826–27 (footnote omitted).

Snyder argues that our Supreme Court limited the application of *Poyser* in *Martin v. Lancaster Battery Company, Inc.,* 530 Pa. 11, 606 A.2d 444 (1992). In that case the employee, who was exposed to lead fumes and dust at his place of

employment, was given periodic blood tests to monitor the level of lead in his blood. The employer intentionally withheld the results of the employee's blood test which indicated that the employee had been exposed to toxic levels of lead. The employer also intentionally altered the employee's blood test results to conceal the elevated level of lead. The employee was subsequently diagnosed with chronic lead toxicity and related complications caused by his exposure to lead. The employee's illness would have been less severe if the employer had not concealed the accurate test results.

The employee sued his employer alleging intentional and willful misconduct. The trial court granted the employer's preliminary objection in the nature of a demurrer and dismissed the employee's complaint. The trial court concluded that the employee was limited to recovery under the WCA. On appeal to this Court, we reversed and held that the employee's claim of alleged fraudulent misrepresentation was actionable at common law. Our Supreme Court affirmed this Court's decision and held that the employee could pursue a common law action against his employer for fraudulent misrepresentation. The Court explained:

> The employee herein has alleged fraudulent misrepresentation on the part of his employer as causing the delay which aggravated a work-related injury. He is not seeking compensation for the work-related injury itself in this action. Clearly, when the Legislature enacted the Workmen's Compensation Act in this Commonwealth, it could not have intended to insulate employers from liability for the type of flagrant misconduct at issue herein by limiting liability to the coverage provided by the Workmen's Compensation Act. There is a difference between employers who tolerate workplace conditions that will result in a certain number of injuries or illnesses and those who *actively* mislead employees already suffering as the victims of workplace hazards, thereby precluding such employees from limiting their contact with the hazard and from receiving prompt medical attention and care.

The aggravation of the injury arises from and is related to the fraudulent misrepresentation of the employer. Thus, the [employee] is not limited to [his] remedies under the Workmen's Compensation Act and [is] not precluded from bringing a common law action against [his employer].

*Id.,* 530 Pa. 16–17, 606 A.2d at 447–48 (emphasis in original).

We agree with the trial court that the limited exception to the exclusivity of the WCA enunciated in *Martin* does not apply to the facts of the present case. The employee in *Martin* sought relief for the aggravation of his work-related injury caused by the employer's delay in reporting accurate blood test results. The employee was not seeking damages for the work-related injury itself. Justice Zappala, in his concurring opinion in *Martin,* emphasized the distinction between the Court's decisions in *Poyser* and *Martin.* He stated:

In *Poyser,* it was clear that although the employer disregarded safety regulations, the underlying injury was "work-related" and occurred in the course of the employee's employment.

In this appeal, the [employee is] not seeking redress for injuries caused by exposure to lead and dust, for those injuries are covered by the Act. Instead, the [employer is] seeking damages for the aggravation to the lead-related injuries due to the employer's failure to communicate the test results evincing [the employee's] actual condition.

*Id.* 530 Pa. 20, 606 A.2d at 449 (Zappala, J., concurring).

■ In the present appeal, Snyder sought relief for his work-related injury; he was not seeking relief for an aggravation of that injury. Therefore, we find that the limited exception to the principles enunciated in *Poyser,* recognized by our Supreme Court in *Martin,* does not apply to this case. The trial court was correct in ruling that Snyder's exclusive remedy for injuries allegedly sustained by his employer's intentional tort must be recovered under the WCA. Therefore, the trial court correctly granted Specialty's preliminary objection and dismissed Snyder's complaint.

Snyder urges this Court to apply the rationale of the Supreme Court in *Martin* to engraft another exception to the exclusivity provision of the WCA. Snyder contends that where the employer violates 35 P.S. section 6931(j)(5), the employee should not be precluded by the exclusivity provision of the WCA from maintaining a cause of action outside of the workers' compensation forum. 35 P.S. section 6931, which is part of the Emergency Medical Services Act, provides guidelines for the education, certification, training and liability of emergency medical personnel. Section 6931(j)(5) provides:

> No emergency medical technician or EMT-paramedic who in good faith attempts to render emergency care authorized by this act at an emergency scene while enroute to a place of employment shall receive any form of reprimand or penalty by an employer as a result of late arrival at the place of employment. An employer may request written verification from any such emergency medical technician or EMT-paramedic, who shall obtain the written verification from either the police officer or ambulance personnel who is in charge at the emergency scene.

35 P.S. § 6931(j)(5).

Snyder argues, "[s]uch a clearly enunciated public policy of the Legislature of the Commonwealth of Pennsylvania enacted after the Workers' Compensation Act, mandates the same result that the Supreme Court found in *Martin v. Lancaster Battery Co.....*" Snyder's Brief, at p. 6.

We find it unnecessary to address Snyder's argument whether the exclusivity provision of the WCA precludes him from maintaining a cause of action based on his employer's alleged violation of 35 P.S. section 6931(j)(5). Snyder's complaint sought one prayer for relief—compensatory and punitive damages caused by Specialty and the individual defendants' intentional infliction of emotional distress. Furthermore, the record reveals that Snyder was not terminated from his employment with Specialty and has not suffered any economic loss from his employer's alleged violation of section

6931(j)(5) of the Emergency Medical Services Act.[1] Although Snyder alleges that he was demoted, he did not seek redress for this alleged violation of the statute. Therefore, the only issue before the trial court was whether Snyder's cause of action for IIED was barred by the exclusivity provision of the WCA. We previously concluded that Snyder's claim was barred and the trial court properly entered Specialty's preliminary objection in the nature of a demurrer.

Snyder alleges an alternative ground for reversing the trial court's decision to grant Specialty's preliminary objection in the nature of a demurrer. Snyder claims that Specialty is collaterally estopped from claiming that exclusive jurisdiction lies within the WCA since it denied that Snyder suffered a work-related injury.[2] Snyder attached to his complaint a notice of workers' compensation denial which notified him that he would be ineligible for workers' compensation. The notice indicated that Specialty denied that it owed workers' compensation because Snyder's injury was not work-related. Snyder claims, "it has been established as a matter of law that the injuries were not work related and [Specialty] is collaterally estopped from claiming otherwise." Snyder's Brief, at p. 10.

The doctrine of collateral estoppel, or issue preclusion, "operates to prevent a question of law or an issue of fact which has once been litigated and adjudicated finally in a court of competent jurisdiction from being relitigated in a subsequent suit." *Grant v. GAF Corporation*, 415 Pa.Super. 137, 153–54, 608 A.2d 1047, 1056 (1992), *aff'd.*, 536 Pa. 429, 639 A.2d 1170 (1994).

1. We note that the Emergency Medical Services Act does not specify a remedy for an alleged violation of section 6931(j)(5). However, section 6936 of the Act does provide that any person who violates "any other provision of this act" commits a summary offense. *See* 35 P.S. § 6936.

2. At argument, Snyder presented one additional issue not raised in his brief. He alleged that Specialty was equitably estopped from claiming that the WCA provides Snyder's exclusive remedy. Snyder did not raise the issue of equitable estoppel in his statement of questions presented. Therefore, this issue is waived. *See Harkins v. Calumet Realty Company*, 418 Pa.Super. 405, 412–14, 614 A.2d 699, 703 (1992) (issues not raised in statement of questions presented are deemed waived).

Collateral estoppel is appropriate where: (1) the issue decided in the prior action was identical with the one presented in the later action; (2) there was a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication; and (4) the party against whom the plea is asserted has had a full and fair opportunity to litigate the issue in question in a prior action.

*Id.,* 415 Pa.Super. 148, 608 A.2d at 1053.[3]

■ Applying these four elements to the facts of this appeal, we find that Snyder has failed to prove any of the elements of collateral estoppel. The issue of whether Snyder's injury was work-related was never adjudicated in a "prior action" and there was never a final judgment on the merits as to whether Snyder's injury was sustained in the course of work. Accordingly, Specialty is not estopped from objecting to the subject matter jurisdiction of the court based on the exclusivity clause of the WCA because it previously denied that Snyder's injury was work-related. This denial was on a notice of denial of workers' compensation benefits which Snyder could have challenged in the workers' compensation forum.

■ Next we examine Snyder's challenge to the trial court's decision to grant the individual defendants' motion for summary judgment based on a lack of subject matter jurisdiction. A motion for summary judgment may be granted only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Pa.R.C.P. 1035(b), 42 Pa.C.S.A. When reviewing the trial court's decision to grant a summary judgment, we must examine the record in the light most favorable to the nonmoving party. *McGinn v. Valloti,* 363 Pa.Super. 88, 89–91,

---

**3.** We recognize that the doctrine of collateral estoppel applies when the prior judgment was made in an administrative hearing such as the Workers' Compensation Board. *See Grant v. GAF Corp.,* 415 Pa.Super. 152, 608 A.2d at 1055.

525 A.2d 732, 733 (1987), *alloc. den.*, 517 Pa. 618, 538 A.2d 500 (1988). Summary judgment may be entered only in cases which are clear and free from doubt and any doubt must be resolved against the moving party. *Id.* This Court will not disturb the trial court's decision granting summary judgment unless there has been an error of law or a manifest abuse of discretion. *Schweitzer v. Rockwell International*, 402 Pa.Super. 34, 39–41, 586 A.2d 383, 386 (1990), *alloc. den.*, 529 Pa. 635, 600 A.2d 954 (1991).

The trial court granted the individual defendants' motion for summary judgment for two reasons. First, the trial court concluded that Snyder's claim is barred by the exclusivity provision of the WCA. Secondly, Snyder's complaint failed to set forth a cause of action for IIED.

Snyder complains that the trial court should not have granted the additional defendants' motion for summary judgment on the basis that his complaint failed to set forth a cause of action for IIED. Snyder contends that the trial court exceeded its authority by granting summary judgment on this ground since it was not explicitly raised in the parties' motion.

Rule 1035 of the Pennsylvania Rules of Civil Procedure specifies when it is appropriate for the trial court to enter a summary judgment. It provides:

> The judgment sought shall be rendered if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

Pa.R.C.P. 1035(b).

Rule 1035 does not specify that the trial court may only grant summary judgment based on the specific grounds raised in the parties' motion. If upon review of the entire record the trial judge determines that there is no genuine issue of material fact, and that the moving party is entitled to a judgment as a matter of law, the entry of summary judgment is warranted. *See Kelly v. Ickes*, 427 Pa.Super. 542, 548–50, 629 A.2d 1002, 1005 (1993).

Next, Snyder alleges that he is able to maintain a suit against the individual defendants for their intentional misconduct based on section 205 of the WCA, codified at 77 P.S. section 72. That section states:

If disability or death is compensable under this act, a person shall not be liable to anyone at common law or otherwise on account of such disability or death for any act or omission occurring while such person was in the same employ as the person disabled or killed, **except for intentional wrong.**

77 P.S. § 72 (emphasis added). Snyder asserts that B. Patel and Carol Hubbard committed the "intentional wrong" of IIED.

In *McGinn v. Valloti, supra,* 363 Pa.Super. 88, 525 A.2d 732, this Court enunciated a test to determine which intentional torts would give rise to a cause of action under section 205 of the WCA. The Court explained, "we examine whether the 'intentional wrong' is one that is not normally expected to be present in the workplace." *McGinn,* 363 Pa.Super. 94, 525 A.2d at 735. The Court provided examples of intentional torts which an employee would not normally expect to be subjected to while at the workplace. The Court surmised that an employee does not normally expect a physical assault or infliction of emotional distress, yet may expect a knowing violation of safety regulations.

Snyder relies on the following language in *McGinn:*
An employee does not normally expect a physical assault, and an employee does not normally expect infliction of emotional distress; therefore these intentional torts have been found to be actionable.
*Id.* (citations omitted).

Despite this statement enunciated in *McGinn,* we do not find that the intentional tort allegedly committed by Patel, Hubbard and Arrison is one that Snyder would not normally expect to be present in the workplace. Snyder avers in his amended complaint that these individual defendants severely reprimanded him for his tardiness, threatened to discharge him, and demoted him to an entry-level position. These acts

clearly are ones which an employee such as Snyder would expect to occur at the workplace. Therefore, under the test enunciated in *McGinn*, Snyder's allegation of IIED does not qualify under the co-employee immunity provision in section 205 of the WCA.

Snyder also contends that his injury caused by the individual defendants' intentional tort falls under the "personal animus" exception of the WCA. *See Kohler v. McCrory Stores*, 532 Pa. 130, 615 A.2d 27 (1992). The WCA's definition of "personal injury" provides in pertinent part:

> The term "injury arising in the course of his employment," as used in this article, shall not include an injury caused by an act of a third person intended to injure the employe *because of reasons personal to him*, and not directed against him as an employe or because of his employment; ....

77 P.S. § 411(1) (emphasis added).

Snyder claims that he qualifies under this exception to the exclusivity provision of the WCA because his supervisors B. Patel and Carol Hubbard committed the IIED motivated by personal animosity. In response to the individual defendants' motion for summary judgment, Snyder submitted the affidavit of Michael Fuller, a fellow employee of Specialty. This affidavit alleged that Fuller observed Patel and Hubbard direct personal animosity towards Snyder for no apparent reason. Snyder claims that the trial court should not have granted the motion for summary judgment since Fuller's affidavit raises a genuine issue as to whether Patel and Hubbard were motivated by personal animosity when they allegedly committed the intentional tort of IIED.

In order for Snyder's claim to have merit, we must first address whether the allegations in Snyder's complaint, accepted as true, adequately set forth a claim for IIED.

■■■ The gravamen of the tort of IIED is outrageous conduct on the part of the tortfeasor. *Kazatsky v. King David Memorial Park, Inc.*, 515 Pa. 183, 189–91, 527 A.2d 988, 991 (1987). Although Section 46 of the Restatement (Second) of Torts has never been expressly adopted as the law of

Pennsylvania, Pennsylvania courts often refer to that section to define the elements of this tort. Section 46(1) of the Restatement (Second) of Torts provides:

§ 46. **Outrageous Conduct Causing Severe Emotional Distress**

(1) One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and if bodily harm to the other results from it, for such bodily harm.

Restatement (Second) of Torts, § 46(1).

The commentary to section 46(1) makes it clear that the conduct contemplated by this tort must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Restatement (Second) of Torts, § 46 comment d (1965). *See also Buczek v. First National Bank of Mifflintown*, 366 Pa.Super. 551, 558, 531 A.2d 1122, 1125 (1987). "Pennsylvania courts have found a cause of action for [IIED] to exist only in limited circumstances, where the conduct has been clearly outrageous." *Rinehimer v. Luzerne County Community College*, 372 Pa.Super. 480, 495, 539 A.2d 1298, 1305 (1988), *alloc. den.*, 521 Pa. 606, 555 A.2d 116 (1988). Moreover, "[t]he liability clearly does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." Restatement (Second) of Torts, § 46 comment d (1965).

██ Snyder alleges in his amended complaint that his employers "screamed at him for being late," "told him he would have to choose between being an Emergency Medical Technician and his employment," "reprimanded [him] for his late arrival," and "demoted [him] to his entry level position." *See* Snyder's Amended Complaint, at p. 4. We do not find that this conduct, if accepted as true, would rise to the level of outrageousness required to permit recovery for IIED.

Because the facts pled by Snyder are legally insufficient to support a cause of action for IIED, we need not address his

contention that Patel and Hubbard committed this intentional tort for personal reasons.

Orders affirmed.