# Fromm v. Pocono Auction Gallery Inc.

C.P. of Monroe County, No. 9486 CIVIL 2013

*Nicole Plank*, for plaintiff.
*Steven N. Goudsouzian*, for defendants.

HIGGINS, *J.*, Aug. 5, 2014—On November 12, 2013, plaintiffs, Bernie Fromm and Barbara Fromm, commenced the instant action by filing a complaint. Pursuant to our order dated March 3, 2014, and after two rounds of preliminary objections, a second amended complaint was filed by plaintiff, Barbara Fromm ("plaintiff") on March 20, 2014. Bernie From was removed as a plaintiff from the action[1]. Defendants, The Pocono Auction Gallery and Eric Hockman ("defendants") filed preliminary objections to the second amended complaint on April 7, 2014. The court heard oral arguments from the parties on June 2, 2014 and we are now prepared to rule on defendants' preliminary objections.

---

1. Plaintiffs filed a praecipe to amend caption removing Bernie Fromm as a plaintiff from this action on March 19, 2014.

The instant action arises from the sale of plaintiff's personal property by defendants at a public auction held on or about June 27, 2013. Prior to auction, plaintiff signed a contract with defendants regarding the sale of her personal property. Defendant Eric Hockman ("Hockman") drafted the contract and plaintiff argues that he did not advise her of the implications of selling the items without reserve or minimum bid. Plaintiff brought an action for breach of fiduciary duty and breach of Unfair Trade Practices and Consumer Protection Law (UTPCPL), Fraud and Piercing Corporate Veil.

In ruling on preliminary objections, we must accept as true all well-pleaded, material and relevant facts, along with all reasonably deducible inferences therefrom. *Schuylkill Navy v. Langbord*, 728 A.2d 964, 968 (Pa. Super. 1999). We need not accept as true, however, "conclusions of law, unwarranted inferences from the facts, argumentative allegations or expressions of opinion." *Myers v. Ridge*, 712 A.2d 791, 794 (Pa. Cmwlth. 1998). When ruling on a preliminary objection that would dismiss the action, we are mindful to sustain the objection only in the clearest of cases. *King v. Detroit Tool Co.*, 682 A.2d 313, 314 (Pa. Super. 1996). With these standards in mind, we now address defendant's preliminary objections to plaintiffs second amended complaint.

In their first preliminary objection, defendants contend that plaintiffs claims are barred by the "gist of the action" doctrine. "The gist of the action doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims. As a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims." The *Brickman Group, Ltd. v. CGU Ins. Co.*, 865 A.2d 918, 927 (Pa. Super. 2004) (citations omitted). Put another way, "the wrong ascribed

to the defendant must be the gist of the action, the contract being collateral." *eToll, Inc. v. Elias/Savion Advertising, Inc.*, 811 A.2d 10, 14 (Pa. Super. 2002). The word

> "[g]ist" is a term of art in common law pleading that refers to the essential ground or object of the action in point of law, without which there would be no cause of action... The "gist of the action" test then, is general test concerned with the "essential ground," foundation, or material part of an entire "formal complaint" or lawsuit.

*eToll*, 811 A.2d at 15 (citation omitted).

Accordingly, to resolve this objection we must distinguish between tort and contract actions. An action in tort arises from a breach of duty that is imposed by the law as a matter of social policy, whereas an action in contract arises only from the breach of a duty imposed by a mutual agreement amongst parties. *Bash v. Bell Tel. Co., of Pa.*, 601 A.2d 825,829 (Pa. Super. 1992) (citation omitted). "In other words, a claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts." *eToll*, 811 A.2d at 14 (citation and internal quotation marks omitted).

Here, the "essential ground" of plaintiffs claim is the auction contract. Without that contract, there is no duty owed to plaintiff by defendants. Defendants' obligation to act in a fiduciary manner by selling her items at auction arises solely from the contract. Without the terms of the contract, i.e. the sale of plaintiffs personal property at auction, plaintiff could not claim a breach of duty by defendants. The contract is central to their lawsuit, not collateral. Any negligence claim, therefore, is improper.

Since plaintiff's claim for negligent misrepresentation

arises out of a contract, we must review the second amended complaint in light of the preliminary objections. Plaintiff states that Hockman came to her residence and discussed auctioning her items. During the discussion, plaintiff alleges that Hockman represented that he knew the value of the antique items. Plaintiff avers that defendants acted in bad faith when they possessed the knowledge of what the items were worth and sold the items for no reserve and no minimum bid and it was "unlikely to be sold for anything close to the amount of money they were actually worth." Plaintiffs second amended complaint ¶41. Plaintiff also insists that the terms of no reserve or minimum bid was not explained by Hockman. She alleges that Hockman's representation that her items were "valuable" induced her to execute the contract, which plaintiff claims ultimately caused her damages when the items only netted her $2,339.25. Again, plaintiffs entire action stems from the contract. Plaintiff is attempting to re-cast this action as a negligent misrepresentation by alleging that Hockman's representations of the value of the items and his failure to advise of no reserve or minimum bid.

Plaintiff clearly avers, however, that she engaged defendants to sell some of her personal items. Plaintiffs second amended complaint ¶11. Plaintiff signed the contract with defendants after engaging defendants to sell her personal property. Accordingly, we find that the contract is not collateral, but the basis for plaintiffs action. The no reserve and no minimum bid language is contained within the contract and we believe that the averments in plaintiffs second amended complaint fails to set forth any specific averments for negligent misrepresentation. Throughout plaintiffs second amended complaint, plaintiff avers that defendants made misrepresentations and at paragraph 44 plaintiff alleges that defendants' "lack of loyalty in failing to advise the plaintiff of what would

occur in a no reserve, no minimum auction." Plaintiffs second amended complaint ¶ 44. Since, the contract is clearly central to plaintiffs action, we believe that the "gist of the action" doctrine applies. Therefore, we sustain defendants' preliminary objections in the nature of a demurrer regarding count I-Breach of Fiduciary Duty.

Defendants also object to count II-Breach of UTPCPL. Under the "catchall" clause un the UTPCPL, it provides that "[e]ngaging in any other fraudulent conduct which creates a likelihood of confusion or of misunderstanding... constitutes an unfair and deceptive act or practice." *Hammer v. Nikol*, 659 A.2d 617, 619 (Pa. Cmwlth. 1995) (citation omitted). "To be actionable under the catchall provision, however, the confusion or misunderstanding created must be fraudulent." *Id* (citation omitted). To recover, the elements of common law fraud must be proven, which include, "a material misrepresentation of existing fact, scienter, justifiable reliance on the misrepresentation, and damages." *Id* at 620. In order to succeed on a claim under the UTPCPL, plaintiff must prove, by a preponderance of the evidence, the common law elements of fraud. *Prime Meats, Inc. v. Yochim*, 619 A.2d 769 (Pa. Super. 1993), *allocatur denied*, 646 A.2d 1180 (Pa. 1994). The specific elements of fraud are as follows: (1) a representation; (2) which is material to the transaction at hand; (3) made falsely, with knowledge of its falsity or recklessness as to whether it is true or false; (4) with the intent of misleading another into relying on it; (5) justifiable reliance on the misrepresentation; and (6) the resulting injury was proximately caused by the reliance. *Gibbs v. Ernst*, 647 A.2d 882, 889 (1994).

In ruling on the preliminary objections, we must accept as true the well-pleaded material facts contained in plaintiffs second amended complaint. A review of

the pleadings in this matter indicates that plaintiff has not included the necessary elements of common law fraud. Although plaintiff sets forth that defendants' representations were deceptive and distorted the facts, she has not identified any material misrepresentation of an existing fact. For example, plaintiff avers that "defendant Gallery engaged in deceptive conduct when it represented that it knew and appreciated the value of the antique items... creating confusion and misunderstanding for the plaintiff when the antique items were sold for an unreasonably low sum of money." Plaintiffs second amended complaint ¶51. Plaintiff never identifies what was deceptive about defendants' representation that it knew and appreciated the value of the antique items. Further, plaintiff has failed to identify specifically which representation made by defendant is false or with knowledge of its falsity. Simply because defendants stated that they had knowledge of the value of the antiques items does not render the statement deceptive or false when that value was not achieved at auction. Moreover, plaintiff has not identified any amount stated by defendant or any material misrepresentation of an existing fact.

Plaintiff argues that the "economic loss doctrine" does not bar her from proceeding against defendants under the UTPCPL. The "economic loss doctrine" states that no cause of action exists for negligence that results solely in economic loss. *Aikens v. Baltimore & Ohio Railroad Co.*, 501 A.2d 277 (Pa. Super. 1985). "The economic loss doctrine 'prohibits plaintiffs from recovering in tort economic losses to which their entitlement flows only from a contract.'" *Martin v. Ford Motor Co.*, 765 F. Supp.2d 673, 684 (E.D. Pa. 2011) (citations omitted). However, there is a fraud exception to this doctrine. The fraud exception states that the doctrine does not apply where plaintiff alleges an intentional tort.

> When the intentional misconduct relates to the quality of the good sold, the economic loss doctrine applies independent of the fraud exception and bars recovery in tort for purely economic losses. Said differently, the economic loss doctrine applies to bar tort claims for purely economic loss even where plaintiff alleges an intentional tort such as fraud, if the misrepresentation relates to the quality of the good sold.

*Id* (citation omitted).

In the instant case, the goods were not sold to plaintiff. Further, the "economic loss doctrine" prohibits recovery in tort economic losses to which plaintiffs entitlement flows only from a contract. As stated above, we determined that plaintiffs action stems from the contract between the parties. In accepting all well-pleaded material and relevant facts, including all reasonably deducible inferences, we conclude that plaintiff has filed to set forth a cause of action under the catchall of the UTPCPL. Hence, we will sustain defendants' preliminary objection in the nature of a demurrer and dismiss this claim.

Next, defendants object to count III of the plaintiff's second amended complaint. Pennsylvania is a fact-pleading jurisdiction, accordingly a "complaint must not only give the defendant notice of what the plaintiffs' claim is and the grounds upon which it rests, but it must also formulate the issues by summarizing those facts essential to support the claim." *Youndt v. First National Bank of Port Allegany*, 868 A2d 539, 544 (Pa. Super. 2005) (citation omitted). "In order to protect those against whom generalized and unsupported fraud may be levied, the Pennsylvania Rules of Civil Procedure require that fraud be averred with particularity." *Id*, citing *Presbyterian Med. Cen. v. Budd*, 832 A.2d 1066, 1072 (Pa. Super. 2003). *See also* Pa.R.C.P. 1019(b).

Plaintiffs second' amended complaint averred that defendant Hockman represented that he was an experienced in auctions and that this was materially false since he was not experienced or knowledgeable in auctions and that he was not aware of the value of the items and he had no intention of selling the items at a reasonable price. Plaintiffs second amended complaint ¶ 61. In paragraph 51 of plaintiff's second amended complaint, plaintiff claims that defendants knew the value of her items and here she claims that defendants are not aware of the value of her items. Plaintiff contradictions on Hockman's knowledge of the value of the items exists throughout. The averment in paragraph 61 is very different than plaintiffs prior averment that Hockman knew of the high value of the items. The term "value" is nebulous throughout plaintiffs second amended complaint. "[A]t the very least a '[p]laintiff must set forth the exact statements or actions plaintiff alleges constitute the fraudulent misrepresentations.'" *Id* at 545, citing *McGinn v. Valloti*, 363 Pa. Super. 88, 525 A.2d 732, 734 (1987). *See also McClellan v. Health Maint. Org. of Pennsylvania*, 413 Pa. Super. 128, 604 A.2d 1053, 1059 (1992). Plaintiffs failure to meet this bare minimum renders their claim for fraud arising from defendant Hockman's alleged misrepresentation insufficient as a matter of law. Defendants' preliminary objections are sustained on this issue.

Finally, defendant Hockman objects to count IV-Piercing the Corporate Veil claim brought against him. Under Pennsylvania law, there is a strong presumption against piercing the corporate veil. *Wedner v. Unemployment Compensation Bd. of Review*, 296 A.2d 792 (Pa. 1972). There are circumstances under which a court will disregard the corporate entity and hold individuals associated with a corporation personally liable. "Factors which may justify piercing the corporate veil include under-capitalization,

234

failure to adhere to corporate formalities, substantial intermingling of corporate and personal affairs, and use of the corporate form to perpetrate a fraud." *Langnecker v. Commonwealth of Pennsylvania*, 596 A.2d 1261 (Pa. Cmwlth. 1991) (citation omitted).

Upon review of the second amended complaint, plaintiff has not alleged sufficient facts, if found to be true, to substantiate the causes of action against Hockman as an individual defendant. Plaintiff has failed to set forth the factors necessary to pierce the corporate veil. For example, plaintiff alleges that Hockman has used and continues to use defendant Gallery for his own purposes. There is no allegation of under-capitalization, that funds were intermingled, that there was no adherence to corporate formalities, or that corporate defendant was a facade behind which Hockman conducted personal business. The allegations in plaintiff's second amended complaint are insufficient support an action to pierce the corporate veil and hold Hockman individually liable.

Plaintiff has twice amended her complaint. However, where there is the potential to amend the complaint successfully, we will permit the amendment. Accordingly, we permit plaintiff to amend her complaint successfully and we enter the following order:

## ORDER

And now, this 5th day of August 2014, after oral argument and upon consideration of defendants' preliminary objections and plaintiffs response thereto, it is hereby ordered that defendants' preliminary objections are sustained. It is further ordered that plaintiff is permitted to file a third amended complaint within twenty days from notice of this order.